JAMES P. KEELER ET AL. v. JOHN DAWSON.

*Descent of property—Illegitimate intestate—Right of widow.*

Under the statutes of descent in force in 1882, the widow of an illegitimate person who had no parents, brothers or sisters, or their issue, living, takes his estate in preference to the relatives of his mother who are not her issue.

Error to Lapeer. (Newton, J., presiding.) Argued January 24, 1889. Decided February 1, 1889.

Ejectment. Plaintiffs bring error. Affirmed. The facts are stated in the opinion.

*Geer & Williams,* for appellants.

*A. C. Baldwin, W. W. Stickney,* and *V. S. Miller,* for defendant.

CAMPBELL, J. Plaintiffs brought ejectment, claiming to be the legal heirs of Franklin Keeler, deceased, who died July 16, 1882, intestate. Franklin Keeler was the only child of Minerva Keeler, and was illegitimate. Minerva Keeler died in 1828, with no other descendants but Franklin. Plaintiffs are heirs of her brothers. Defendant is grantee of Ellen Keeler, widow of Franklin Keeler, who had no issue, and she has died since her husband.

The only question in the case is whether under the statutes of descent in force in 1882 the widow of an illegitimate person who had no parents, brothers or sisters, or their issue, living, takes in preference to the relatives of his mother who are not her issue. The statutes of descents, found in chapter 219, How. Stat., contains under section 1 nine successive subdivisions, which, taken

together, include all cases of inheritance usually possible. Sections 2 and 3 contain provisions affecting the heritable character of illegitimate children; and section 3, under which plaintiffs claim, provides that—

"If any illegitimate child shall die intestate without lawful issue, his estate shall descend to his mother; if she be dead, it shall descend to the relatives of the intestate on the part of the mother, as if the intestate had been legitimate."

The provision under which defendant claims is subdivision 8, which is as follows:

"If the intestate shall leave a husband or wife and no issue, nor other lineal descendants, nor father, mother, brother, nor sister, and there be no issue of brothers or sisters, the estate of such intestate shall descend to the husband or wife of such intestate, as the case may be."

The provisions of previous sections, so far as the widow is concerned, gave her a life-estate to the exclusion of all heirs but the descendants of the husband. Subdivision 8 gave her preference in the inheritance over all persons but his parents and the descendants of one or both of his parents. It is only where there is no widow that more remote kindred would take. In the present case there are no descendants of a parent of the intestate. If legitimate, it is not claimed that plaintiffs would be near enough of kin to interfere with the widow's inheritance. There is therefore nothing in section 3 which, comparing it with subdivision 8 of section 1, in any way conflicts with it, or gives plaintiffs any title in preference to the claim of the widow. The only theory on which such a conflict is set up is that all the provisions of section 1 should be read as if in each clause the word "person," as applied to the intestate, had prefixed to it the word "legitimate," so as to read "when any legitimate person shall die seized," etc.

We do not think it allowable to interpolate conditions

into a statute which are not necessary under some plain rule of law, or to make obscure language that is clear and positive. It belongs to the Legislature to define and establish the transmission of estates. It is only where there is such a clashing between two clauses that one or the other must be modified to harmonize them that courts can properly enter on the always perilous work of bending language to secure harmony. We see no such conflict in the present case; and it is neither easy nor desirable to reason at large on what has, as we think this has, no need of that kind of elucidation. But the theory which would insert the qualification of legitimacy in section 1 would not further the purpose nor clear up the difficulty at all. The phraseology used in section 1 is substantially similar to that used in all statutes of descent, here as well as elsewhere. There are other distinctions besides those of legitimacy. Except for special statutory or constitutional provisions, citizenship would be a condition necessary to transmit by descent. Sometimes resident aliens have greater rights than non-residents, and alien enemies may be under disabilities not attaching to alien friends. So in some places attainted persons have no heritable blood. This statute would be subject to those difficulties as well as those of legitimacy, should they enter, as by legislation some of them may be made to enter, into our laws. So for many purposes the word "person" may apply under chapter 1 of the Revised Statutes to corporate persons, but it would be absurd to give it such a meaning here. The only sensible meaning to be given to the word here is that it shall include all natural persons so far as they are capable of having the lawful family associations mentioned in the first section. The exceptional cases found in sections 2 and 3 would no doubt modify section 1 so far as section 1 could not apply to illegitimate persons, but no further. If extended further

it would lead to extraordinary results. The statute of descents is the only existing law on that subject. The common law of descents has never been our law. We never had primogeniture, and our canons are those of the civil, and not of the common, law. When a statute covers the whole subject, there is no room for any other rule, and the common law has no function beyond the possible one of interpreting words not otherwise provided for. If the first section of the statute refers only to legitimate intestates, no provision exists in favor of their issue, any more than of other relationships, or determines the respective rights of near and remote descendants. This difficulty alone should prevent the introduction of the theory claimed, if there were no other objections.

Even at the common law an illegitimate person had no heritable incapacities beyond those of tracing lineage backward. His marriage and its consequences have always been of the same validity as marriages of other persons. It would be impossible to attribute to any legislative action a purpose of making his widow worse off than the widow of any one else. If the intestate's mother had survived him, the widow would not have succeeded, because his mother is recognized as capable of inheriting from him, and is named in the law before the widow. The same section, which provides that the mother shall inherit, also says her relatives shall inherit as if they were legitimate. If the mother's brothers had been legitimate relatives of the intestate they would not have stood before the widow. The statute gives them no better standing on account of their illegitimate relation. We see no conflict in the sections, so far as subdivision 8 is concerned, and think the widow took the estate.

The judgment should be affirmed, with costs.

SHERWOOD, C. J., MORSE and LONG, JJ., concurred. CHAMPLIN, J., did not sit.