RUFUS HIBLER v. JACOB HIBLER AND JOHN J. SURLES.

*Wills—Charge upon realty—Lapsed legacy.*

1. A testator gave to his wife the use for her life of all his real and personal estate, and directed that a certain legacy, given to one of his sons as the sum which the testator considered equitably his due for services rendered, should be paid out of the personal estate on hand at the time of the wife's death. The remainder of the personal property he bequeathed, share and share alike, to all of his children. The personal estate proved insufficient to pay the legacy. And it is held that the legacy was not a charge upon the real estate of the testator, which he specifically devised to the legatee and another son, subject to the payment of other legacies.

2. The will provided that one of said legacies should be paid to the legatee in one year after the death of the testator and his wife. The legatee survived her father, but not her mother. And it is held that the legacy did not lapse, but became vested in the legatee upon the death of the testator, and descended to her heirs.

Appeal from Oakland. (Moore, J.) Argued January 25, 1895. Decided March 5, 1895.

Bill to construe a will. Complainant and defendant Hibler appeal. Decree affirmed. The facts are stated in the opinion.

*Aaron Perry*, for complainant.

*J. Ten Eyck*, for defendant Hibler.

*D. L. Davis* and *P. B. Bromley*, for defendant Surles.

GRANT, J. Philip Hibler died testate October 11, 1880. His will was executed July 6, 1880, and is as follows:

"*First.* After all my just debts are paid and discharged, the residue of my estate, both real and personal, I give, bequeath, and dispose of us follows: To my beloved wife, Ann, the use of all my estate, both real and personal, for and during her natural life, and after her death to be disposed of as follows, viz.: To my son Jacob, the sum of $1,500, this sum being the amount which I consider to be justly and equitably his due for services rendered me and the family since he became of age, and to be paid to him first out of my personal property on hand after the death of my said wife, and before any division shall be made of said personal property. The balance of my personal property, after the death of my said wife, to be divided equally among my five children, viz., John, Jacob, Jane, Rufus, and Elizabeth, share and share alike, if they be living at my death and after the death of my said wife; but, if either of said children shall then be dead, then, in that event, the child or children of said deceased child to take the share which their parent would have been entitled to receive by right of representation, share and share alike. The above and foregoing declares the way and manner I want all the personal property of which I may die possessed to be distributed and disposed of.

" *Second.* And as to my real estate situated in the townships of Orion and Pontiac, in the county of Oakland, and State of Michigan, being the farm on which I now reside, and being all I own in said townships, I give and devise to my sons Jacob and Rufus, to have and to hold the same, to them, their heirs and assigns, forever, upon

the uses and trusts following, viz.: After the death of my said wife, to pay to my son John, as hereinafter stated, the sum of $2,000. Secondly, to pay to my daughter Jane the sum of $800 in one year after the death of myself and my said wife, and to pay to my daughter Elizabeth the sum of $1,000 in one year after the death of myself and my said wife. And I hereby give to my said trustees full power and authority, after the death of my said wife, to sell any and all of my said real estate, at private or public sale, for the purpose of paying off such legacies; and after having paid the said legacies in full out of said real estate, as aforesaid, then it is my will that the rest and residue of my said real estate, or of the avails thereof, if the same shall have to be sold as aforesaid, shall be divided between my two sons Jacob and Rufus, share and share alike, to have and to hold the same in fee simple forever. The said sum of $2,000 hereinbefore devised to my son John is to be paid to him, or, if need be, to his legal guardian, on or before one year after the death of my said wife.

" And I do hereby nominate and appoint my two sons. Jacob Hibler and Rufus Hibler executors of this, my last will and testament; herein and hereby revoking and annulling all other wills by me made."

Jacob Hibler alone qualified as executor. The personal property of the estate was appraised at $734.62. The debts proven were $339.65. The real estate described in the will was valued at $8,000. Another piece of land was valued at $125. These comprised all the property of the estate. The widow died September 23, 1893. Elizabeth Hibler was married to John J. Surles, November 28, 1878. She died intestate March 3, 1884, leaving one child, who died August 25, 1891. Complainant filed this bill to secure a construction of the will. The defendants filed separate answers, and the cause was heard upon the pleadings. The court decreed that the bequest to Elizabeth became a vested right at the death of Mr. Hibler, and was inherited by her child, and that, upon the death of the child, his father, Mr. Surles, inherited the bequest, and that it was a charge upon the lands mentioned in the will. It further

decreed that the lands were devised to Jacob and Rufus subject to the payment of the $2,000 to John, $800 to Jane, and $1,000 to Elizabeth, and that the bequest of $1,500 to Jacob was not a charge upon the lands. Jacob appealed from the entire decree, and Rufus appealed from the decree affirming the bequest to Elizabeth.

1. Was the bequest to Jacob a demonstrative legacy, chargeable upon the real estate devised to Jacob and Rufus, upon the failure of sufficient personal property at the death of the testator to pay it? It is the settled rule that legacies are always payable, presumptively, out of the personal estate, and if a deficiency exists the legacies must abate, unless they are made chargeable upon the real estate. 2 Redf. Wills, 208; 13 Amer. & Eng. Enc. Law, 110, 126; Canfield v. Bostwick, 21 Conn. 550. Another equally well settled rule is that the real estate of the testator must be made chargeable with the payment of legacies either expressly or by clear implication. Massaker v. Massaker, 13 N. J. Eq. 264; Olden v. White, 5 Id. 629; Taylor v. Tolen, 38 Id. 91. Also, if legacies are given generally, and the residue of the real and personal estate is afterwards given in one mass, the legacies are a charge on the residuary real, as well as the personal, estate. Hawk. Wills, 294; Thayer v. Finnegan, 134 Mass. 64, where the principle will be found discussed, and many authorities cited; White v. Olden, 4 N. J. Eq. 343; Hoyt v. Hoyt, 85 N. Y. 149. It follows that it is the duty of courts to first examine with care the will itself, for, if the intention of the testator can be gathered from the four corners of the instrument, that intention must prevail and be given effect.

The bequest to Jacob of $1,500 was not a specific legacy. It was a demonstrative legacy, and especially made payable out of the personal estate. The testator first provided for the disposition of his personal estate, directing that the legacy to Jacob should be first paid, and that the

residue should be equally divided among his children, naming them. After so providing he seemed to be in some doubt whether his intention as to its disposition was sufficiently clear, and he therefore added this clause:

"The above and foregoing declares the way and manner I want all the personal property of which I may die possessed to be distributed and disposed of."

He then makes a specific devise of his farm to his two sons Jacob and Rufus; charging them, however, with the payment of certain amounts to his other son and to his two daughters. The will conveyed the title in fee to them, burdened with the above payments.

Specific legacies and specific devises are not chargeable with the payment of demonstrative or general legacies, unless made so expressly or by clear implication. There is nothing in this will to show either an express or implied intent to charge the land specifically devised with the payment of the legacy to Jacob. *Bevan v. Cooper*, 72 N. Y. 317, 325. It was there said:

"In such case it has never been held by our courts that such devise did not give full effect to the phrases of the residuary clause, without forcing, or giving ground for, an inference that the legacies were in the mind of the testator, as being that subtraction from the real estate which was to leave a rest and residue of it. The cases cited on the argument, in which legacies have been charged upon the real estate on the strength of the residuary clause, are where the language of it was such (aided or not by other provisions of the will, and by extraneous circumstances, as the case might be) as that the court could well hold that there was a blending of the two kinds of property—the whole estate—into one mass, and that a gift of the residue so blended imported an intention that the legacies were to be paid first thereout. When there has been a prior specific devise of real estate, that interpretation has not been thought applicable."

A case almost the exact counterpart of the one at bar is *Johnson v. Poulson*, 32 N. J. Eq. 390. It was there

held that expressly charging a farm devised with certain payments, thereinafter specified, excludes those preceding.

When M. died, bequeathing to his wife, by a will, $1,000, to his son M. $400, and the residue of his estate to his four children (naming them), and he left no personal estate, it was held that the legacies were a charge on the real estate. *McCorn v. McCorn,* 100 N. Y. 511. In that case no reference was made in the will to any personal estate. It was justly said that the two legacies were mere mockeries, unless meant to be a charge upon the real estate. See, also, *Pierrepont v. Edwards,* 25 N. Y. 128; *Giddings v. Seward,* 16 Id. 365. The distinction between these and many other such cases which might be cited, and the case at bar, is apparent.

The fact that the testator stated in his will that he considered the amount to be justly and equitably due the legatee, for services rendered him and his family since he became of age, cannot be held to show an intent to charge the land specifically devised with the payment thereof. The acknowledgment of a moral or equitable obligation will not justify courts in setting aside the plain provisions of a will. *Duncan v. Township of Franklin,* 43 N. J. Eq. 143, 145; *Towle v. Swasey,* 106 Mass. 100.

It is also urged that the testator must have known at the time of executing the will that he was not possessed of sufficient personalty to pay this legacy, and that, therefore, he must have intended that it should be paid out of the devised realty. Some courts have given weight to this fact, and, under certain circumstances, it might have some significance, though it is doubted by the supreme court of Massachusetts how far this ought to be taken into account. *Thayer v. Finnegan,* 134 Mass. 65. We think it of little, if any, significance in the present case. What value the testator placed upon his personal property at that time does not appear. There is nothing to show that

the will was made in anticipation of immediate death, or what his plans and hopes might be for accumulating other personal property. The provisions of the will are so clear that the only natural inference to be drawn is that he thought he either had, or should have, sufficient personal estate to satisfy this legacy. But, be this as it may, he had charged upon the devise, worth not to exceed $8,000, the payment of $3,800. The intention to charge it with further payments must clearly appear in the will, and we find no language in it to justify that conclusion. The construction placed upon this provision of the will by the learned circuit judge must be sustained.

2. Did the $1,000 legacy to Elizabeth lapse by reason of her death before the death of her mother? Here, also, the intent of the testator must control, if it can be gathered from the instrument. The question is not free from doubt, and as was said in *Rood v. Hovey*, 50 Mich. 400, "no amount of reasoning can throw much light on the meaning of the will." It is certain that the testator intended that the farm should go to his two sons Jacob and Rufus. It is equally certain that he intended to bequeath to Elizabeth the $1,000, and that in order to secure it, as well as the other legacies, he directed that the land should be sold to pay the legacies. Payment was postponed for the benefit of the widow, who had a life estate in the entire property, and was postponed a year after her death, in order to give the devisees, who were also the executors, time to raise the money and pay off the legacies, in which event their title would become complete. Should they refuse or neglect to pay, the legatees could, by proper proceedings, enforce a sale of the land to pay off the legacies. The rule is tersely stated in *Bruce v. Charlton*, 13 Sim. 68, as follows:

"If a testator gives a legacy to A. B. at the end of 10 years after his death, the legacy is contingent; but if he

gives it to A. B. to be paid to him at the end of the 10 years, it is vested."

See, also, *Marsh v. Wheeler*, 2 Edw. Ch. 162.

Unless an intention appears to the contrary, the will must be held to operate from the death of the testator. *Rood v. Hovey*, 50 Mich. 395; *Curtis v. Fowler*, 66 Id. 696. See, also, *Lyman v. Vanderspiegel*, 1 Aikens, 275.

We think the legacy did not lapse, but became vested in Elizabeth upon the decease of the testator, and descends to her heirs.

Decree affirmed. Costs will be paid out of the estate.

Long, Montgomery, and Hooker, JJ., concurred. Mc-Grath, C. J., did not sit.