ENSIGN *v.* DUNN.

1. BILLS AND NOTES—EXECUTION—ADMISSIONS—EVIDENCE.

The maker of a note signed by her husband, with the qualifying phrase "as surety," admitted the execution of the note where she did not deny it under oath, and testified that she signed the instrument, and she must be held to have executed it in the manner and form alleged and as shown by the instrument, she as principal and her husband as surety.

2. SAME—EVIDENCE.

The fact that the husband signed the note "as surety" under his wife's signature may be regarded as of significance in determining her relation to and participation in the transaction for which the note was given, namely, the purchase of a lighting plant to be installed upon property that she had an interest in.

3. SAME—PARTIES—SALES—CONCLUSIONS—EVIDENCE.

Defendant's testimony that the note was given for a lighting plant which was installed in her mother's home and that the witness signed the note, but the husband was the one who purchased such plant, was a conclusion.

4. SAME—HUSBAND AND WIFE.

If the note was given for a debt of her husband it would be void as to her, no matter in what capacity she or he signed it.

5. Same—Separate Estate of Married Women.

If the plant was purchased either by her or by her husband for her, to be installed as a fixture on realty in which she had an interest and her husband none, the note given for the purchase price was valid.

6. Estates—Contingent Interests—Remainders.

If it is possible to construe an estate as vested rather than contingent, the law favors such construction. 3 Comp. Laws, § 8795 (4 How. Stat. [2d Ed.] § 10635).

7. Same—Wills—Vested Remainder.

An estate in a farm created by the will of defendant's father, which devised to the widow, her mother, a life interest, and provided defendant and her sister should have the remainder in equal shares if both survived the life tenant, if not, to the survivor, and if neither survived, to testator's nearest relative, was a vested, not a contingent, interest, subject to be defeated by the death of the devisee of such remainder.

Error to Jackson; Parkinson, J. Submitted April 20, 1914. (Docket No. 85.) Decided July 24, 1914.

Assumpsit by Charles B. Ensign against T. C. Dunn and wife on a promissory note. Judgment for defendants. Plaintiff brings error. Reversed.

*J. M. Hatch & Son,* for appellant.

*R. H. Rossman,* for appellees.

Steere, J. This action was brought in the circuit court of Jackson county upon the following promissory note:

"Jackson, Mich., Feb. 17, 1909.
"One year after date I promise to pay to the order of W. S. Hunter, Jr., ($200.00) two hundred dollars at the office of ————. Value received, with interest at five per cent. per annum until paid and attorney fees if not paid at maturity.
"Mrs. T. C. Dunn,
"Mr. T. C. Dunn, Surety.
"Address, Jackson. Mich.
"R. R. No. 4. Due 2-17-10."

Indorsement on the back:

"W. S. HUNTER, JR."

Plaintiff's declaration was upon the common counts in assumpsit, with notice that under the money counts said note would be given in evidence, a copy of which was attached to the declaration.

The record does not disclose whether Mr. T. C. Dunn was served with process or not, but he did not appear in the case, which has proceeded against Mrs. Dunn as though he were not a party.

Mrs. Dunn entered her appearance and pleaded the general issue, giving special notice with her plea that at the time of the execution of said note she was a married woman, under the disability of coverture; that the indebtedness for which the note was given did not relate to her sole and separate property, and she received no consideration therefor.

The case was tried before the court without a jury. There is little conflict in the testimony. Plaintiff in the first instance introduced the note in evidence and rested.

Defendant Mrs. Dunn, as a witness in her own behalf, testified that at the time the note was executed she was a married woman, the wife of defendant T. C. Dunn, whose signature appears to the note as surety; that the note was given for a lighting system bought by Mr. T. C. Dunn, her husband, installed at the home of her mother on a farm 4½ miles from Jackson where she and her husband were then living, her husband working the farm on shares for her mother; that her father had owned the farm at the time of his death, nine years previous to the trial, and by will left it to his wife, Mrs. Dunn's mother, for life, and at her death to Mrs. Dunn and her sister in equal shares if both survived their mother, if not, to the survivor of them, and, if neither of them survived the mother, then to his nearest relative; that

she was yet living on the farm with her mother at the time of the trial, her husband having left her soon after the lighting plant was installed; that she did not know where he was, and had instituted divorce proceedings against him; that she signed the note, but the lighting plant was purchased by Mr. Dunn, her husband.

Plaintiff then showed that he purchased the note for value before maturity in good faith, and was a holder in due course; also introduced the depositions of one LeClaire, who sold the lighting plant as agent for W. S. Hunter, who installed it and to whom the note was given. This witness testified that the plant was sold to "Mr. Dunn and Mrs. Dunn, too." When asked who ordered said lighting plant, he replied that he could not say positively.

The sole defense in this case is that of coverture, and the precise question to be determined upon this testimony is whether Mrs. Dunn gave this note for a consideration received by her under a contract relating to her sole and separate property.

Not having denied the execution of the note under oath, and having admitted it upon the stand, she is held to have executed the same in manner and form as alleged and shown by the instrument, she as principal and her husband as surety.

The fact that Mr. Dunn signed this note as "surety," under the signature of his wife, and presumably after she had signed, may be regarded as of significance in determining her relation to, and participation in, the purchase made when the note was given. In her testimony she refrains from giving any enlightening details of the transaction. In bare outline she only states:

"The note was given for a lighting system installed in my mother's home. * * * I signed the note, but he is the one that purchased the plant."

The facts by which she arrives at that conclusion are not disclosed. She is silent as to the occasion of this purchase, on whose initiative, who conducted the negotiations, what was said or what was done by her or any one else, except as above stated. The agent testified that it was purchased by both of them—also a conclusion, without the facts upon which it was based. Assuming both have the facts in mind and are equally honest, they apparently reach different legal conclusions.

That she did participate in this transaction in some capacity is shown by the note she signed as principal. Her husband signed the note as surety, which in no way qualified his liability, it is true, and was of no importance to the payee. The note is in the singular number, and the added word "surety" does not change the character of the note as joint and several, with both signers principals, but, as between the signers, it is some indication of the relation they bore to each other. She is presumed to know, and manifestly did know, what she signed. She makes no claim to the contrary, or that she was misled or deceived. Her husband signed the note with her, presumably with her knowledge, as a "surety."

"A surety is one who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor." Black's Law Dictionary.

If the note was given for a debt of her husband, it would of course be void as to her, no matter in what capacity he or she signed it or what the understanding between them was, but if it was given in consideration for a lighting plant, purchased either by her or by her husband for her, acting as her agent, to be installed as a fixture on realty belonging to her, in whole or in part, her separate estate in which the husband had no interest, she is not protected by the

disability of coverture. Those questions are well settled in this State, and we need only refer to section 8690, 3 Comp. Laws, and authorities there cited.

The trial court found and held:

"That she did not contract for or purchase this lighting plant; that it was not delivered or annexed to the freehold at her request or in reliance upon any promise or representation made by her; that she was not undertaking to add to or benefit any sole or separate property of her own; and that in executing this note she was, in fact, undertaking to pay a liability contracted and incurred by her husband, and that she is not legally responsible for its payment, and as to her judgment must be rendered in her favor. * * * "

These conclusions were necessarily reached from her two brief statements, before quoted, that the note was for a lighting plant bought by her husband and installed in her mother's home, without any explanation of how she came to sign the note, or the circumstances of her participation, negative or positive, in the transaction. Her testimony could all be true and the purchase might have been made by her husband at her request, for her and as her agent, upon her selection of the property, which might have been delivered and installed in reliance upon promises and representations made by her. We think, under the scant facts shown, her unexplained execution of this note at the time of the purchase, signed by her husband as surety only, raises a presumption that, conceding he made the purchase, it was for her and authorized or ratified by her, the plant being confessedly purchased for and installed as a fixture upon realty in which she had a title interest, separate and apart from her husband.

It is contended in her defense that her contingent remainder interest in one-half of this farm can in no way affect the question; that she was only on the farm as the wife of a tenant, with no other immediate

rights, her title interest being remote and contingent upon her surviving her mother, who had full possession, control, use, and enjoyment of the same to the exclusion of all others so long as she might live. That she had a vested fee title to a half interest in this farm, subject to a life estate, with a possibility of its being defeated by her death before that of her mother, is clear. The law of Michigan favors vested estates where such construction is possible, and such is the proper construction here. Section 8795, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10635) ; *Toms* v. *Williams,* 41 Mich. 552 (2 N. W. 814) ; *Eberts* v. *Eberts,* 42 Mich. 404 (4 N. W. 172) ; *Rood* v. *Hovey,* 50 Mich. 395 (15 N. W. 525); *Union Mutual Ass'n* v. *Montgomery,* 70 Mich. 587 (38 N. W. 588, 14 Am. St. Rep. 519) ; *Van Gallow* v. *Brandt,* 168 Mich. 642 (134 N. W. 1018). Her title in this farm constituted a separate estate in relation to which she could contract as a *femme sole.* While it is true her immediate legal status and right on the place at the time this plant was installed were only that of the wife of a tenant working the farm on shares, she was, in fact, living in the home of her childhood with her own mother on the old farm of her dead father, in which she owned a half interest with her sister, subject to her mother's life interest. Though her husband left her and the place shortly after this transaction, she, at least up to the time of the trial, continued to make her home there, presumably in the use and enjoyment of this gas plant. As between the two, strong reasons are shown, sentimental and otherwise, why she should desire to and did purchase this improvement and have it installed in the family home, in which she was financially interested, and there is little, if anything, to indicate why he should purchase it for himself and make it a fixture on property in which he had no interest beyond working the place on shares, by an apparently feeble tenure.

We think a necessary conclusion is to be drawn from the undisputed evidence in this case, considered as a whole in all its aspects, that the gas plant for which the note was given was purchased by or for Mrs. Dunn, to be installed as a fixture annexed to a freehold in which she was, and her husband was not, interested; that in giving this note she contracted and dealt in relation to her own separate estate, and thus received a consideration therefor.

The judgment in her favor is reversed, and a new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OS-TRANDER, BIRD, and MOORE, JJ., concurred.