*In re* SHUMWAY'S ESTATE.

1. DESCENT AND DISTRIBUTION—COMMON LAW—STATUTES—HEIRS.
   The common law touching descent of estates has never obtained in Michigan; the statute of descent, being the only existing law, no one inherits property or becomes a legal heir except as it provides.

2. SAME—WILLS—HUSBAND AND WIFE—HEIRS.
   Where the statute makes any part of the intestate land descend to the surviving spouse, such spouse is thereby made heir and entitled to share in a gift by will to the heirs of the other. *Menard* v. *Campbell*, 180 Mich. 583.

3. WILLS—CONSTRUCTION—ESTATES—DEVISEE OF LIFE ESTATE AS REMAINDERMAN.
   There is nothing inconsistent or repugnant in a devise of a life estate with remainder to the life tenant, and such remainder may be a vested one; and the fact that it can never come into the actual possession of the remainderman should not prevent its being so construed.[1]

4. SAME—HUSBAND AND WIFE—HEIRS.
   Where the will of a husband devised a life estate to the wife and at her death to "my legal heirs, to be divided between them according to the provisions of the statute" (Act No. 200, Pub. Acts 1893), she was included as one

---

[1]On power to create remainder after life estate with absolute power of disposal, see notes in 6 L. R. A. (N. S.) 1186; 39 L. R. A. (N. S.) 805.

of his heirs, and at her death her heirs were entitled to her share.

5. SAME—CONSTRUCTION.

And the fact that the testator knew that the life tenant would be dead when the time for division, possession, and enjoyment of the remainder arrived, would not justify the court in changing the terms of the will, and each of the devisees seised of a vested remainder might devise, convey, or otherwise dispose of his or her interest, unless restricted by the will.

6. SAME—VESTED REMAINDERS.

The policy of the Michigan statute is in favor of vested, rather than contingent or postponed, estates; and only plain, unambiguous language by the testator will prevent application of that rule in construing a will.

7. SAME.

The will spoke at, and took effect from, the time of testator's death, at which time the legal heirs were determined and their interests vested; and the provision in the will for the widow to take a life estate in the whole and a fee to the half was not inconsistent or repugnant, but simply operated to merge her two estates as to the one-half, investing her with an absolute title in fee to that portion.

8. SAME—INTENT.

In the construction of a will, it is a cardinal rule that the intent of the testator should govern, but the intent must be tangibly expressed, beyond mere surmise, conjecture, or supposition, where the construction contended for would disinherit the wife as to the half of the real estate given her by the statute, and there is nothing in the will which indicates ignorance of the statute, but rather that testator was familiar with its provisions, to which he made reference.

9. SAME.

The law favors that construction of a will which conforms most nearly to the general law of inheritance.

KUHN, J., dissenting.

Error to Lenawee; Chester, J., presiding. Submitted June 22, 1916. (Docket No. 69.) Decided December 22, 1916. Rehearing denied April 19, 1917.

Leland F. Bean, administrator *de bonis non*, filed a petition in the probate court for an order of partial distribution of the estate of Nathan Shumway, deceased. From an order awarding distribution to the heirs of Nathan Shumway alone, Ida A. Alcock and another, heirs of Marietta Shumway, deceased, widow of Nathan, appealed to the circuit court. From a judgment awarding distribution to the heirs of Marietta as well as of Nathan, the heirs of Nathan appeal. Affirmed.

*H. R. Clark, J. N. Sampson, H. I. Bourns,* and *L. F. Bean,* for appellants.

*D. B. Morgan* and *J. C. Howell,* for appellees.

On August 3, 1899, Nathan Shumway, of Fairfield township, in Lenawee county, died testate without issue, survived by his wife, Marietta Shumway, who was named as executrix in his will. The amount of his estate is but partially disclosed, but appellants state in their brief that "he left a large estate," of which his realty was but a small part, while appellees say that deceased and his wife, who had "lived together for 50 years or more, by hard work on a farm accumulated by frugality and economy a fair property."

Deceased's will was executed on December 22, 1893, to which he added a codicil on November 12, 1898. His wife survived him about 13 years, dying December 6, 1912. His will was duly admitted to probate, the widow being appointed executrix. The real estate left by him was then appraised at $10,125. On May 7, 1900, the final account of the executrix was allowed and an order of distribution made, in part, as follows:

"It is therefore ordered, adjudged, and decreed that the real estate belonging to the estate of deceased be assigned in the parts and proportions following, that is to say: To Marietta Shumway for and during her

natural life, with power to dispose of the whole or any part thereof, as provided by the will of Nathan Shumway, deceased, and at her death to the heirs of Nathan Shumway, as provided by the will of said Nathan Shumway."

Following the death of Marietta Shumway in 1912, an administrator *de bonis non* was appointed and a portion of the real estate sold by him, with the approval of the court, followed by a petition for a partial distribution. Upon this petition the probate court made an order providing for distribution of $13,351.42, proceeds of the sale of real estate which belonged to the estate of Nathan Shumway, deceased, amongst his heirs living at the time of the death of his wife, Marietta.

On appeal by the heirs of Marietta Shumway to the circuit court this order was modified to the extent of giving one-half of such proceeds to her estate. The present appeal is from that portion of the circuit court decision which modifies the probate order. This issue hinges on the construction of the first clause in Nathan Shumway's will, which, after providing for the payment of sickness, funeral expenses, and just debts, is as follows:

"I give and devise to my beloved wife, Marietta, the use of all the real estate of which I may be seised or possessed for and during the period of her natural life, and after her decease I give, devise and bequeath all of said real estate to my legal heirs to be divided between them according to the provisions of the statute."

Exclusive of the codicil, no further reference to real estate is made in the will. The remaining seven clauses are as follows:

"*Second.* I give and devise to my said wife should she survive me, all my household goods, my wearing apparel, library, pictures and fireproof safe, trusting that she will give such articles as she chooses to my friends for mementoes or keepsakes in her distribution of her property.

"*Third.* The balance of my personal estate shall be listed and carefully appraised in such sums as each item would be then worth in market and from such list my said wife Marietta may select one-half in value which I hereby give and devise to her absolutely.

"*Fourth.* After such selection by my said wife the balance of my personal estate shall be divided into such number equal shares and half shares as will fulfill the following conditions.

"*Fifth.* I give and devise to each of my brothers and sisters who may be living at the time of my decease and to each of their children and to each of the children of any of my own brothers and sisters (who may be dead) one equal share and if any such children shall be dead leaving issue then such issue shall have the share that would have come to its parent if living. The word 'issue' in the last above clause shall be deemed all the issue taking as a unit.

"*Sixth.* I give and bequeath to my half-sister Amanda M. Cheney if living and each of her children one equal half share (divided as aforesaid) and if any of her children shall be dead leaving issue such issue shall have the half share that would have come to its parent if living. This distinction between own and half brothers and sisters I believe to be right and should be incorporated in the statutes for the distribution of estates.

"*Seventh.* All sums owing to me at the time of my decease from any of my heirs or legatees not barred by the statute of limitations shall be taken and construed as an advancement and deducted from the share they would otherwise receive of my estate."

The eighth and last appoints his wife as sole executrix, with expressions of confidence, and requesting that she only be required to give a nominal bond. The codicil which deceased added to his will in 1898, about a year before his death, so far as material here, is as follows:

"I hereby authorize and empower the executrix of my said will, Marietta Shumway, to bargain, sell and convey such part of my real estate as she may desire to sell, with the same force and effect that I might do

if living, without the necessity of obtaining a license to do so from any court. And I direct that the proceeds of such real estate so sold by her (if any) shall be treated and considered as real estate and be divided among the devisees and legatees in said will named in the same proportion as in my said will specified for the division of my real estate."

Appellants, heirs of Nathan Shumway, urge that his widow was not a "legal heir" of her husband, and it was not his purpose that she should take absolute title to one-half of all the real estate of which he died seised; that he did not intend in using the term "legal heirs" to include her as such, but otherwise expressly provided for her as a legatee and devisee, giving her the possession, use, and enjoyment of all his real estate so long as she lived, manifestly intending that when she died it should go to those of his own blood, or his natural and legal heirs; while appellees, the heirs of his widow, Marietta Shumway, insist that the trial court correctly construed the plain terms of the will according to their true meaning and his manifest intent; that testator presumptively knew the legal meaning of the legal terms which he appropriately used; that he is assumed to have known that under the law of inheritance, which he apparently had consulted, if he left no children or father or mother, as he knew would be the case, his wife, as his legal heir, would inherit one-half of the real estate of which he died seised, and her title thereto would vest at the time of his death.

BROOKE, J. (*after stating the facts*). The statute governing inheritance of property in force when Nathan Shumway made his will and when he died (Act No. 200, Pub. Acts 1893) would have given one-half of his entire estate, both real and personal, to his widow, Marietta, and the other half to his surviving brothers and sisters and the children of those

who did not survive him, had he died intestate. The same essential bestowing language of inheritance, "shall descend," is applied to both the widow's half and the half inherited by blood relations. The common law touching descent of estates has never obtained in Michigan. The statute of descent is and always has been the only existing law on that subject in this State (*Keeler* v. *Dawson*, 73 Mich. 600 [41 N. W. 700]), and no one inherits property or becomes a legal heir except as it provides.

In *Turner* v. *Burr*, 141 Mich. 106 (104 N. W. 379), holding that a husband was heir of his wife, who directed in her will that a certain portion of her estate "be distributed among my lawful heirs according to law," this court said:

"In English law the word 'heirs' has always meant the person succeeding to the title to real estate on the death of another—one who succeeds to the title by force of the law. A common definition is: 'He upon whom the law casts an estate of inheritance immediately on the death of the owner.'"

In Rood on Wills, § 450, the applicable rule is stated as follows:

"But where the statutes make any part of the intestate lands descend to the surviving spouse, such spouse is thereby made heir, and in such cases and proportion entitled under a gift by will to the heirs of the other."

And the rule is again recognized as the settled law of this State in the late case of *Menard* v. *Campbell*, 180 Mich. 583 (147 N. W. 556, Am. & Eng. Ann. Cas. 1916A, 802).

With the at least presumptive knowledge that his wife was his legal heir and would inherit half of the real estate of which he died seised if she survived him, testator gave her the use of the whole of it during her natural life, and then added:

"After her decease, I give, devise and bequeath all of said real estate to my legal heirs, to be divided between them according to the provisions of the statute."

According to the provisions of the statute, his wife was included in his "legal heirs." His creation of an intervening life estate, even to her, did not negative her status in that particular.

"There is nothing inconsistent or repugnant in a devise of a life estate with remainder to the life tenant, and such a remainder may be a vested one, and the fact that it can never come into the actual possession of the remainderman should not prevent its being so construed." 40 Cyc. p. 1668.

"The fact that the devisee of the particular estate is one of several persons who at the death of the testator answer the description of heirs or next of kin does not prevent the application of the rule. He would take jointly with the others a vested remainder." 24 Am. & Eng. Enc. Law (2d Ed.), p. 394.

The fact that a life tenant can never come into the remainder does not change the time when title to the remainder vests. *Cushman* v. *Arnold,* 185 Mass. 165 (70 N. E. 43). In case of a devise for life with remainder over to testator's heirs, which includes the life tenant, the fact that testator knew the life tenant would be dead when the time for division, possession, and enjoyment of the remainder arrived, would not justify the court in changing the terms of the will, and each of the devisees seised of a vested remainder might devise, convey, or otherwise dispose of his or her interest, unless restricted by the plain terms of the will. *Robinson* v. *Mitchell,* 99 Md. 50 (57 Atl. 625).

The above principles are well sustained in *Bullock* v. *Downes,* 9 H. L. Cas. 1, and *Archer* v. *Jacobs,* 125 Iowa, 467 (101 N. W. 195). The latter is a carefully considered opinion, instructively treating and citing numerous authorities upon the various contentions there arising in a complicated will case, where the

court had occasion to deal with certain questions well in point here. Among these questions was the significance of similar deferring words as those used here, claimed to affect the time when title to the remainder vested. There the testator had directed in his will that the estate should go to his grandchildren or their issue "upon the death" of his daughter, while here the testator directed that his estate, or a certain portion of it, should go to his legal heirs "after her (his wife's) decease." In considering the contention that the language used in that case indicated an intention on the part of the testator that the remainder should not vest until the termination of the life estate, the court said:

"We think this construction cannot prevail. The will gives evidence of having been prepared by a person of experience, and the testator himself must have been a man of intelligence and business sagacity. Had it been his purpose to suspend the vesting of the remainder until his daughter's death, it is very probable he would have said so in unequivocal terms, and not have left it be arrived at as a matter of inference. Words like those under consideration and others of similar import are of common use in wills, and, save in a few exceptional cases, the courts have uniformly held them to refer to the time when the remainderman shall come into the enjoyment of the estate, and not to the time when his interest vests. Such is the interpretation where the gift of the remainder follows the words 'upon the death,' or 'after the death,' or 'at the death' of the life tenant, or other equivalent forms of expression. In *Kinkead* v. *Ryan*, 64 N. J. Eq. 454 (53 Atl. 1053), the words creating the remainder are (having first provided a life estate for the wife):

" 'After the death of my said wife I give, devise and bequeath all my estate unto my beloved children [naming them], and any other child of mine that may be born hereafter share and share alike and to their heirs and assigns forever.' * * *

"These words were held insufficient to postpone the vesting of the remainder in the children *in esse*. In *Beatty's Adm'r* v. *Montgomery's Ex'x*, 21 N. J. Eq. 324, the same construction was given to the words

'from and after the death of my wife I give and bequeath,' etc.; and it was held that, although each of the remaindermen died. before the determination of the life tenancy, the remainder was vested in them, and passed to their representatives"—citing many other authorities.

This court has more than once held that the policy of our statute is in favor of vested rather than contingent or postponed estates, and only plain, unambiguous language by the testator will prevent application of that rule in construing a will. *Rood* v. *Hovey,* 50 Mich. 395 (15 N. W. 525); *Hibler* v. *Hibler,* 104 Mich. 279 (62 N. W. 361); *Clark* v. *Mack,* 161 Mich. 545 (126 N. W. 632); *Van Gallow* v. *Brandt,* 168 Mich. 649 (134 N. W. 1018); *Menard* v. *Campbell, supra; Ensign* v. *Dunn,* 181 Mich. 456 (148 N. W. 343).

We find no confusing provisions. in the first paragraph of testator's will to which well-seasoned rules of construction are inapplicable. His wife, to whom he gave a life estate in the realty, was one of his several legal heirs amongst whom he directed division of the remainder in fee "according to the provisions of the statute." The will spoke at and took effect from the time of his death, at which time, under the statute to which he made reference, the legal heirs were to be determined and title to their interests vested in them, unless undoubtful language in the will plainly provided otherwise. The only words of futurity found are of a kind presumed to relate particularly to the time of enjoyment of the remainder, rather than when the estates shall vest, and are to be so construed. The fact that by the will the widow took both a life estate in the whole and a fee to the half was not an inconsistent or repugnant provision, but simply operated to merge. her two estates as to the one-half, investing her with an absolute title in fee to that portion.

It, however, is strenuously urged that the intent of

the testator as expressed in the will, taken as a whole, plainly indicated otherwise, and under the cardinal rule of construction the manifest intent of the testator should govern. Of this rule of construction there can be no question, but the intent must be tangibly expressed somewhere in the instrument in such language as plainly conveys the thought beyond mere surmise, conjecture, or supposition, and makes evident that Nathan Shumway intended that his wife should be disinherited as to the half of the real estate which the law gave her, and his distinct direction that his real estate, subject to the life estate, be divided amongst his legal heirs (of whom she was one) according to the provisions of the statute should be ignored.

We discover nothing in any language of the will which indicates ignorance of the law upon this subject of descent of property or an intent that the general and applicable rules of construction should be disregarded in interpreting the instrument. Legal terms in the will are appropriately used. Its general tenor indicates that testator was a man of intelligence and independent thought, who had given the subject more than ordinary consideration and familiarized himself with the provisions of the statute to which he makes reference, one portion of which did not impress him favorably and in his opinion ought to be amended. In fact, it is not an unreasonable inference that he drew this will with the statute before him or in mind. He made reference to it more than once, and followed its sequences in dealing with beneficiaries, *first*, as does the statute, making provision for the wife, who manifestly was nearest to him, and naturally the first object of his solicitude. He gave her, unless appellant's construction prevails, just what the statute gave her, with the added use and possession of the real estate which they had possessed and enjoyed together, with absolute ownership of their household effects and

the familiar chattels of the home, of which she otherwise would own but the half, with the suggestion that, if she chose to give some of the articles to his friends as keepsakes, it would be agreeable to him. That it was his first and constant care to gratify, amply provide, and smooth the way for her after he was gone, runs through the scheme of his will from beginning to end; first providing that she should have the undisturbed use and enjoyment of the real estate while she lived, without further mention of individuals, he in general terms directs that otherwise it shall go as the statute of descent provides. Lastly, he declares that he has full confidence in her, designates her as his executrix, and, apparently knowing that the law would compel a bond of an executrix, requests that it be but nominal. That he intended to leave her what the statute would have given her and a little more is, we think, as reasonable an inference from this will, considered in its entirety, as that he intended to exclude her from this substantial interest in the real estate which the statute gave her.

It is a standard rule that the law favors that construction of a will which conforms most nearly to the general law of inheritance. *Murdoch* v. *Bilderback*, 125 Mich. 45 (83 N. W. 1007), and cases there cited.

The provisions of the codicil, which he executed some years later, are confirmatory of the general scheme of the will, and manifestly only added in the interests of his wife, enlarging her discretion with a view to make it easier for her, as executrix, to handle the estate.

In harmony with the above rule of construction, we conclude that his express directions that his real estate, subject to the life estate he created, be divided between his legal heirs "according to the provisions of the statute," should be followed.

The judgment is affirmed.

STONE, C. J., and OSTRANDER, MOORE, STEERE, and PERSON, JJ., concurred with BROOKE, J.

KUHN, J. (*dissenting*). The most recent statement by this court of a cardinal rule observed in the construction of wills is found in *Stender* v. *Stender*, 181 Mich. 648 (148 N. W. 255), where it was said:

"Of course, that intention must be gathered from the instrument itself. But in determining what the real intention of the testator was, the entire instrument must be examined and all of its terms and language must be given due consideration."

In my opinion, there is no difficulty in ascertaining from section 1 of the will what the intention of the testator was. It is perfectly clear that his widow should have a life use of all of the real estate of which he died seised, and it was not to be divided and distributed until after her death. If he had intended that she should have one-half of it absolutely at her death, as would result from the conclusion reached by my Brother BROOKE, would he not have so stated? If such had been his intention, would he not have said, "and after her death one-half of the said real estate shall go to my legal heirs and the other half to the legal heirs of my said wife, Marietta," or that in substance? That he had the interests of his wife in mind is evident throughout the will. In paragraph 1 he gives her the life use of all his real estate. In paragraph 2 he gives her outright all his household goods, wearing apparel, library, pictures, and fireproof safe, with the simple suggestion that she "give such articles as she chooses to my friends for mementoes or keepsakes in her distribution of her property." In paragraph 3 he provided that the balance of his personal property shall be listed and appraised, and that she select one-half of the same in value to be hers absolutely. He also appointed her sole executrix and re-

194—Mich.—17.

quested that she only be required to give a nominal bond.

I cannot read this will without coming to the conclusion that it was clearly the intention of the testator that his wife was to have only the life use of his real estate, and that at her death the remainder was to go to the heirs of his body. Any other construction, in my opinion, is a technical one, and does violation to the plain intention of the testator. In the case of *Menard* v. *Campbell,* 180 Mich. 583 (147 N. W. 556, Am. & Eng. Ann. Cas. 1916A, 802), cited in support of appellee's position, we approved the conclusion of the trial judge who said:

"A careful examination of the will has failed to reveal to me the expression of any intention on the part of the testatrix that her property should inure to the benefit of her immediate family, to the exclusion of any of the legal heirs of Joseph Honore Nault."

In the will before us the construction I am satisfied should be given the controverted section can easily be gathered from the section itself, and from the four corners of the instrument. For these reasons, I am unable to concur in affirming the judgment

It should be reversed, with costs to the appellants, and instructions to the lower court to affirm the order of the probate court for partial distribution.

BIRD, J., did not sit.