### *In re* EAST'S ESTATE.

#### EAST *v.* HUNT.

1. DESCENT AND DISTRIBUTION—DEATH WITHOUT ISSUE—WIDOW AND SISTERS AS HEIRS.

  Where a man dies intestate without leaving issue him surviving but is survived by his widow and his sisters, the widow and sisters are his "heirs" (CL 1948, § 702.80).

2. WILLS—WITNESSES—DEPRIVATION UNDER WILL.

  One who witnesses a will, having but two witnesses, deprives himself or herself of any right to share beneficially under the will (CL 1948, § 702.7).

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3]  16 Am Jur, Descent and Distribution, §§ 40, 101.
[2]  57 Am Jur, Wills, § 327.
[2]  Proof, or possibility of proof, of will without testimony of attesting witness as affecting application of statute relating to invalidation of will, or of devise or legacy, where attesting witness is beneficiary under will.  133 ALR 1286.
[5, 8]  57 Am Jur, Wills, § 1218.
[6]  57 Am Jur, Wills, §§ 1133, 1135.
[7]  57 Am Jur, Wills, § 1137.
[8]  57 Am Jur, Wills, § 1160.
[9]  57 Am Jur, Wills, § 1320.
[10]  57 Am Jur, Wills, § 1372.
[10]  Husband or wife as heir within provision of will or trust instrument.  157 ALR 347.

3. DESCENT AND DISTRIBUTION—WIDOW AS HEIR OF HUSBAND.

In this State by statute and decision of the Supreme Court a surviving widow is the heir at law of her husband (CL 1948, § 702.80).

4. SAME—COMMON LAW—STATUTES.

The common law of descent of estates has never obtained in this State as the statute of descent has been the only existing law on the subject in this State (CL 1948, § 702.80).

5. WILLS—VESTED ESTATES PREFERRED RATHER THAN CONTINGENT OR POSTPONED ESTATES.

The policy of the State relative to the descent of real estate is so in favor of vested rather than contingent or postponed estates as to require that only plain, unambiguous language by the testator will prevent application of the rule that vested estates are preferred, when construing a will (CL 1948, § 702.80).

6. SAME—CONSTRUCTION—INTENT.

In the construction of a will the intention of the testator is the important thing to determine through adoption of rules of construction applicable to the peculiar facts and circumstances of each case.

7. SAME—INTENT DRAWN FROM WHOLE WILL.

The substance of testator's intent as drawn from the whole will is to be considered rather than the form of expression or meaning of a word or phrase found in it.

8. SAME—CONSTRUCTION—STATUTES OF DESCENT AND DISTRIBUTION —VESTING OF ESTATES.

The law favors that construction of a will which will distribute the testator's estate most nearly in accordance with the statute of descent and distribution and also favors the vesting of estates (CL 1948, § 702.80).

9. SAME—CONSTRUCTION—REPUGNANT PROVISION.

Where an estate in fee is devised, a subsequent provision attempting to control the disposition of an uncertain portion of the devised estate as might remain after the death of the original devisee is void for repugnance to the devise in fee.

10. SAME—CONSTRUCTION—"DIRECT" HEIRS OF REMAINDERMAN.

In proceedings to construe will, executed in 1892, of testator who died in 1905, leaving a life estate in farm to testator's widow, who occupied farm and died thereon in 1928, and remainder to claimant's husband, a boy whom testator raised

without adopting and who occupied farm until his death, childless, in 1947, with a further provision that in case the boy died without leaving "direct" heirs then the estate was to be divided equally between testator's brothers and sisters, claimant, widow of boy and sole beneficiary under his will, was entitled to fee of farm as against claim of testator's nephew, the term "direct heirs" not being limited to lineal descendants, where it appears that all of testator's brothers and sisters predeceased his widow, one of them was a witness to his will and claimant who married the boy some three months after will was executed took care of testator during his last illness (CL 1948, §§ 702.7, 702.80).

Appeal from Cass; Arch (Charles O.), J., presiding. Submitted June 9, 1949. (Docket No. 20, Calendar No. 44,375.) Decided September 8, 1949.

In the matter of the estate of Enos East, deceased, Clarence J. East presented petition for construction of a will. Minnie C. Hunt, executrix of will of Percy C. Hunt, appeared in opposition. Judgment in probate and circuit courts for Clarence J. East. Executrix appeals. Reversed and remanded for entry of judgment for the executrix.

*Clarence M. Lyle,* for petitioner.

*Leonard J. Weiner (Carroll B. Jones,* of counsel), for executrix.

Boyles, J. One Clarence J. East, individually and as administrator with will annexed of the estate of Enos East, deceased, filed a petition in 1948 in the probate court for Cass county, asking for a construction of the will of said decedent and for a determination that certain lands belonged to said estate. Minnie C. Hunt, as executrix of the estate of Percy C. Hunt, deceased, appeared in said matter in opposition to said petition, claiming that said lands belonged to the estate of said Percy C. Hunt. In the probate court, and again on appeal in the circuit

court, it was ordered that the estate of Percy C. Hunt had no interest in said lands. Minnie C. Hunt, as executrix of the latter estate, appeals.

The lands in question consist of a farm which belonged to Enos East at the time he died testate in March, 1905. His last will and testament, which was executed in 1892 and duly admitted to probate after his death, was as follows:

"I Enos East of Calvin Cass County Michigan do hereby Make Ordain and publish this My Last Will and Testament that is to Say after all My Lawful Debts are paid and discharged the Residue of My Estate both personal and Real I Give and Bequest as follows to My Wife Iantha C. East all both personal and Real to have and hold as her own during her lifetime. After her Death to be divided as follows. One Hundred Dollars to the Trustees of Birch Lake Cemetry to be kept as a permanent fund for which the Interest is to be used in keeping Said Cemetry in Repair. And the further Sum of fifty Dollars to Each of My Brothers and Sisters for the purpose of Buying a Bible or Some other Relic the Remainder of My Estate I Give and Bequeath to Percey C. Hunt the Boy I Raised.

"further, in case he dies Without leaving direct Heirs then the Said Estate to be divided Equally between My Brothers and Sisters

"hereby Revoking all former Wills by Me Made."

Percy C. Hunt died without leaving any issue or lineal descendants. His heirs were his surviving spouse and two sisters. Are they his "direct heirs"? The present case involves construction of the meaning of said words "direct heirs" in the above will. *Enos East* died childless, leaving a widow and several brothers and sisters, all since deceased. During his lifetime he and his wife took in and raised a young boy by name Percy C. Hunt, the remainderman named in his will. According to the inventory,

his estate consisted of $838.25 personal property, and a farm then appraised at $4,625. When the administration of his estate was closed in October, 1905, and the then-administrator with will annexed was discharged, the probate court entered an order assigning the residue of his personal property equally to his surviving widow Iantha C. East and Percy C. Hunt, and assigning said real estate "according to the terms of said will," without construing the will as to who were entitled to the same. The case is now before us to determine who is now entitled to said farm.

Apparently no controversy arose as to the ownership or right to possession of said real estate until after the death of Percy C. Hunt in 1947. In the meantime, following the death of Enos East and the closing of his estate in 1905, his surviving widow Iantha C. East continued to live on and occupy the farm, apparently as a life tenant under his will, until her death in 1928. Percy C. Hunt had married Minnie in 1892, during the lifetime of Enos East and about 3 months after Enos East had executed his will. There is evidence that Percy C. Hunt and his wife lived on and continued to occupy the said farm after the death of Iantha in 1928 until the death of Percy C. Hunt in 1947. His surviving widow Minnie C. Hunt has since continued to occupy said farm up to the present time. Thus the farm has been in the possession of Iantha, the widow of Enos East, Percy C. Hunt, named in his will, and Minnie C. Hunt, the surviving widow of Percy C. Hunt named in his will as sole beneficiary, from the death of Enos East in 1905 up to the present time.

Percy C. Hunt died testate in 1947 without leaving issue surviving. By his will, he left all his property to his wife Minnie C. Hunt. He never had a child, and his surviving "heirs" who would take his property as such, had he died intestate, would be his sur-

viving widow Minnie C. Hunt and two sisters.. CL 1948, § 702.80 (Stat Ann 1943 Rev § 27.3178[150]). Under the proviso in the concluding paragraph in the will of Enos East, the testator directed that if Percy C. Hunt died "Without leaving *direct* Heirs," his real estate, the farm here in question, should "be divided Equally between My Brothers and Sisters." Under that provision in the will of Enos East, the petitioner herein, a son of one of the brothers of Enos East, claiming that "direct heirs" is limited to "lineal descendants," now claims that the estate of Percy C. Hunt has no interest in said lands.

At the time of the death of Percy C. Hunt in 1947, there were no brothers and sisters of Enos East then in existence. The last of them had died before 1917. They are, however, survived by numerous issue, one of whom, Clarence J. East, is the petitioner in the instant case.

The will of Percy C. Hunt was duly admitted to probate and the administration of his estate is still pending in probate court. His surviving widow Minnie, the appellant here, and the sole devisee under his will, was also named as the executrix. She inventoried the farm in question as a part of the assets of his estate. As hereinbefore indicated, Clarence J. East, son of one Elwood East, a deceased brother of Enos East, petitioned the probate court to strike the said real estate from the inventory of the Percy C. Hunt estate, on the ground that the widow and sisters of Percy C. Hunt were not his *direct* heirs; and to direct that the property belonged to the heirs of the deceased brothers and sisters of Enos East. In other words, to direct that Minnie C. Hunt, the surviving widow of Percy C. Hunt, and his two surviving sisters are not the *direct* heirs of Percy C. Hunt; and that in the absence of such *direct* heirs, the estate of Percy C. Hunt does not have the fee in said farm, under the will of Enos East.

The probate court, and the circuit court on appeal, held that "direct heirs" means lineal descendants, kindred by blood, and ordered that the real estate be stricken from the inventory of the estate of Percy C. Hunt. In the circuit court, judgment was entered stating that said lands "reverted" to the estate of Enos East on the death of Percy C. Hunt without "direct" heirs; and that Minnie C. Hunt has no right, title or interest therein. From such judgment, Minnie C. Hunt appeals, both as an heir and the devisee of Percy C. Hunt and the executrix of his estate.

At the outset, our primary consideration must be to determine the intent of the testator Enos East. It is plain, from its appearance, that his will was not drawn by one skilled in the preparation of wills. The record shows that it was prepared by a neighboring farmer, the testator's brother-in-law, who also was a justice of the peace. One of the sisters of the testator was one of the two witnesses to the will, by which act she deprived herself of any possible right to share in the farm in question as one of the testator's "brothers and sisters." CL 1948, § 702.7 (Stat Ann 1943 Rev § 27.3178[77]). Obviously, the testator first indicated his primary consideration was to devise the remainder of his estate (the farm) to Percy C. Hunt. He concludes the first paragraph of his will as follows:

"the Remainder of My Estate I give and Bequeath to Percey C. Hunt the Boy I Raised."

Apparently as a secondary consideration, he adds:

"further in case he dies Without leaving direct Heirs then the Said Estate to be divided Equally between My Brothers and Sisters."

That addition cannot now be literally complied with, inasmuch as there were no brothers or sisters surviving at the time of the death of Percy C. Hunt

in 1947, all having died long before the death of Iantha C. East, and at least 30 years before the death of Percy C. Hunt. Does any rule of law require that the will be construed to mean that the testator's intent was to leave the farm to the issue of his deceased brothers and sisters? It is their claim, as advanced by counsel for the appellee, that Minnie C. Hunt, not being a "direct" heir of her deceased husband Percy C. Hunt, leaves him without any "direct" heir within the meaning of that term in Enos East's will, wherefore the condition upon which his fee title depends has not been met. Counsel apparently overlook the fact that Percy C. Hunt was survived by two sisters, and that fact apparently was also overlooked or ignored by the trial court. The precise question we are asked to solve, and on which the decision of the lower court depended, is whether Minnie C. Hunt, except for her husband's will, would inherit any interest in the real estate of Percy C. Hunt as a "direct" heir. The question has not been passed upon in this State. However, the statute (CL 1948, § 702.80 [Stat Ann 1943 Rev § 27.3178 (150)]) makes the surviving widow an heir at law of her husband, and this Court has so held. *Hall* v. *Williamson,* 304 Mich 657. Is she a "direct" heir?

In *Re Shumway's Estate,* 194 Mich 245 (LRA 1918A, 578), the husband in his will devised his real estate to his "legal" heirs. The Court, holding that his surviving spouse was included, said:

"The common law touching descent of estates has never obtained in Michigan. The statute of descent is and always has been the only existing law on that subject in this State."

Until after the death of Percy C. Hunt in 1947, all of the parties interested in the title to this farm seem to have considered that upon the death of Enos East in 1905 the fee to this farm vested in Percy C.

Hunt, subject to a life estate given to the testator's widow. Iantha C. East and Percy C. Hunt have occupied the farm for upwards of 40 years. The claim of the petitioner, a son of one of Enos East's deceased brothers, would defeat such vesting of the title solely upon the theory that Percy C. Hunt had left no "direct" heirs at his death in 1947. Such a construction would be contrary to the settled policy of the law. In the *Shumway's Estate Case, supra,* the Court said:

"This Court has more than once held that the policy of our statute is in favor of vested rather than contingent or postponed estates, and only plain, unambiguous language by the testator will prevent application of that rule in construing a will. *Rood* v. *Hovey,* 50 Mich 395; *Hibler* v. *Hibler,* 104 Mich 274, 279; *Clark* v. *Mack,* 161 Mich 545 (28 LRA NS 479); *Van Gallow* v. *Brandt,* 168 Mich 642, 649; *Menard* v. *Campbell,* 180 Mich 583 (Ann Cas 1916A 802); *Ensign* v. *Dunn,* 181 Mich 456."

Appellee relies on *In re Spier's Estate,* 224 Mich 658. In that case Alice V. Spier devised certain real estate to her husband, who predeceased her. The question presented was, what became of the devise to the husband. The lower court concluded that it passed to the deceased husband's issue, relying on CL 1915, § 13793,* which provides:

"When a devise or legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will, in the same manner as the devisee or legatee would have done, if he had survived the testator; unless a different disposition shall be made or directed by the will."

_____
* Now CL 1948, § 702.11 (Stat Ann 1943 Rev § 27.3178[81]).

In reversing the judgment of the circuit court, this Court held that the husband was not an "other relation" of his wife, within the meaning of the above statute. The *Spier Case* is obviously distinguishable. "Other relation" and "direct heirs" are plainly not synonymous terms.

In construing a will, the Court will favor a construction which conforms more nearly to the general law of inheritance.

"In the construction of a will the intention of the testator is the important thing to determine through adoption of rules of construction applicable to the peculiar facts and circumstances of each case.

"The substance of testator's intent as drawn from the whole will is to be considered rather than the form of expression or meaning of a word or phrase found in it.

"The law favors that construction of a will which will distribute the testator's estate most nearly in accordance with the statutes of descent and distribution and also favors the vesting of estates." *Gardner* v. *City National Bank & Trust Co.* (syllabi), 267 Mich 270.

In *Smith's Petition,* 291 Pa 129 (139 Atl 832), the will under consideration by the court contained the following provision:

"In case of the death of any of the above named grandchildren before receiving the sum of $100 the same revert to my direct heirs."

While the conclusion in that case rested upon the intention of the testator as expressed by the term "revert," the conclusion reached by the court was expressed in the following language:

"Finally, this is not a case where the assumption, sometimes made, that children, or heirs at law, were the special care of a devisor, can be allowed controlling effect, for the will shows that this devisor had in

mind the desire to benefit her grandchildren quite as much as to care for her children; and the fact that, at one point of the instrument, testatrix refers to the latter as her 'direct heirs' has no significance as indicating a special, or exclusive, care for them, since by that expression, as used, she evidently meant no more than 'first takers.' "

Applying the above conclusion to the case at bar, in considering the intent of the testator as to who would be the "direct" heirs of Percy C. Hunt, under the law of descent of real estate in this State his surviving widow Minnie C. Hunt and his two surviving sisters would be the "first takers" of his estate.

In 47 Am Jur, p 802, the rule is stated as follows:

"Thus, the use of the term 'lawful,' 'legal,' 'remaining,' 'surviving,' 'nearest,' 'like,' 'first,' 'then,' 'next,' and 'next legal,' preceding the term 'heirs' or 'heirs of the body,' is mere surplusage and does not restrict the ordinary meaning of the word 'heirs,' and the words 'and their heirs and assigns forever' will not change their effect."

In construing the will of Enos East, we are not unmindful of the fact that the testator first granted the fee of his real estate to Percy C. Hunt, and then concluded by attempting to limit that fee by a later clause contained in a separate paragraph.

"A will in terms giving to testator's wife all his property, 'to be hers absolutely,' gives an absolute estate, notwithstanding the succeeding repugnant provision, 'providing, however, that if at her death any of said property be still hers, then the residue still hers shall go to my, not her, nearest heirs.' " *Moran* v. *Moran* (syllabus), 143 Mich 322 (5 LRA NS 323, 114 Am St Rep 648).

"Where an estate in fee is devised, a subsequent provision attempting to control the disposition of such uncertain portion of the devised estate as might remain after the death of the original devisee is void

for repugnance to the devise in fee." *Gibson* v. *Gibson* (syllabus), 213 Mich 31.

The intent of the testator is fairly discernible from the circumstances of the case. He had not adopted Percy C. Hunt so as to make him a legal heir. Percy C. Hunt married Minnie shortly after the execution of the will in 1892. Minnie C. Hunt took care of Enos during his last sickness. For about 13 years Enos East had ample opportunity, if he so desired, to exclude Minnie C. Hunt from taking any interest in his farm as an heir at law of his chosen beneficiary Percy C. Hunt. Nothing in the record indicates any reason why Enos East should have intended to exclude Percy C. Hunt's wife from benefiting by the devise of his farm to her husband Percy C. Hunt. It is quite improbable that it was the intent of Enos East that his unknown and unascertained, perhaps unborn, nephews and nieces, children of his brothers and sisters, should succeed to the title of the farm, more than 40 years after his death and some 30 years after the death of his brothers and sisters, in preference to the widow of Percy C. Hunt. We are not in accord with the view taken by the lower court, that the testator intended by the use of the term "direct heirs" to exclude the surviving spouse of Percy C. Hunt. "Direct heirs" is not limited to lineal descendants as appellee contends.

We conclude that under the circumstances of this case, the estate of Percy C. Hunt has fee title to the farm in question. Under the will of Percy C. Hunt which has been admitted to probate, the title passes to the appellant Minnie C. Hunt.

Reversed and remanded for entry of judgment for appellant Minnie C. Hunt in consonance with this opinion, and for remand to the probate court

for further appropriate proceedings. Costs to appellant.

Sharpe, C. J., and Bushnell, Reid, North, Butzel and Carr, JJ., concurred with Boyles, J.

Dethmers, J., concurred in the result.