## Ann Bailey v. John A. Bailey and others.

*Will construed: Widow: Lawful heirs.*  A will provided for a life estate, free from taxes, to be held by the testator's widow, in land to be paid for out of his other estate, and also gave her an annuity payable regularly after his decease, and made all of his other property, real and personal, subject to disposal, if necessary, to meet that and other charges; and then, after providing for certain other persons, left the residue of his estate to "descend to his lawful heirs, according to law:"—

*Held,* That although the testator left no children, it was not the intent of the will that the widow should take any more than the specified bequests; and that, taking the whole will together, she was not to be considered as among the "lawful heirs" spoken of.

*Will: Presumption.*  The presumption that a testator means to die intestate, as to a part of his estate, will not be raised where the will does not naturally lead to that inference.

*Heard May 2.    Decided July 9.*

Error to Ingham Circuit.

This was an appeal by Ann Bailey, from the order of distribution of the estate of Joseph C. Bailey, deceased, granted by the probate court for Ingham county.   On the trial of the appeal in the circuit court, the order of the probate court was affirmed, and the cause is brought to this court on writ of error.

25 MICH.—24.

*S. F. Seager* and *J. D. Conely*, for plaintiff in error.

*Dart & Wiley* and *G. V. N. Lothrop*, for defendants in error.

CAMPBELL, J.

The question presented by the record arises under the will of the deceased, and it becomes necessary to determine whether the widow of the testator is entitled to take an interest in his property not specifically devised, as in case of intestacy, or whether her claim is confined to the property and interests distinctly and expressly given to her. The whole controversy turns on the construction of the will, and the present appeal is from an order of distribution made contrary to the claim of the widow.

The testator left a widow, but no descendants. Under the statutes in force at the time of his death, she would have been entitled, in case of intestacy, to a life interest in the lands of the deceased, and an absolute right to his personal property after payment of debts. The personal property here is said to be exhausted, and the real estate is the only property to be affected.

The will contains a few bequests and devises which are as follows:

*First.* A devise is made to the widow, of a homestead in Lansing, consisting of eleven city lots, "for and during her natural life, and thereafter to my lawful heirs." It is stated that the title is held under a certificate of purchase from the state, and not fully paid for. The executors are directed to pay the balance out of money or personal property, if sufficient, and if not sufficient, out of the avails of other real estate, "and that thereupon a patent be issued to my said wife during her natural life, as

aforesaid, with remainder to my lawful heirs, my executor paying the taxes thereon, and upon the property above described, at all times."

*Second.* A lot is devised to testator's sister, Azuah Russell, "for and during her natural life, or so long as she shall live in and occupy the same as a residence, as at present, but no longer."

*Third.* Testator bequeaths to his widow, "all my household furniture, and all the personal property therein, together with all my wearing apparel." And out of the remainder of his real and personal property, after payment of debts and expenses, he bequeaths to her an annuity of four hundred dollars per year, for life, the first quarterly payment to be at the end of three months from his death.

*Fourth.* He gives his sister, Elizabeth Bailey, an annuity of two hundred dollars per year for life, to be in lieu of any obligation she may hold against him. Then follows the clause in controversy, as follows: "Leaving the rest, residue and remainder of all my estate and effects, real and personal, as aforesaid, after payment of debts, legacies, and funeral expenses, and other charges, *to descend to my lawful heirs according to law.*"

The facts supposed to bear upon the will, and aid in determining the intent of the testator, were the age of the testator and wife,—she being forty-nine and he fifty-two years old; the proximity of his kindred, being brothers and sisters, and issue of deceased brothers and sisters; and the value of the estate, estimated at from fifty to seventy-five thousand dollars.

Mrs. Bailey has received the annuity, and occupied the homestead. The personal property was not sufficient to pay debts, and some real estate has been sold for that purpose.

There is not much in these circumstances to throw

light on the will.    And we are compelled, in seeking the intention of the testator, to derive it mainly, if not entirely, from the tenor of the instrument itself.    In reading that document we are bound, if possible, to carry out the real design of the testator, as derived from a comparison of all its parts, and the meaning of all its words and phrases must, if possible, be harmonized.    Beyond this a court cannot lawfully wander into conjectures.    We can only determine what the testator meant, by what he said.

The word "heirs" is not, taken by itself, conclusive as to the persons intended to take.    It may, doubtless, have a broad or a narrow meaning, according as the one or the other is indicated by the context.    The definitions in the text books are broad enough to include such a life estate as under our statutes "descends" to the widow of a childless intestate, and in the indexes to our Revised and Compiled laws, the widow is referred to as "inheriting" under these circumstances.    *Blackstone* defines an heir as "he upon whom the law casts the estate immediately on the death of the ancestor; and an estate, so descending to the heir, is in law called the inheritance."—*2 Bl. Com., 201.* The term "ancestor" means merely the person from whom the estate passes, and not a progenitor, as in popular acceptation.

But, on the other hand, the term "heir," as generally used, unquestionably refers to one who takes an estate of inheritance himself, and it is so used in some places in our statutes.    For example, it evidently has this meaning in *section 2606 of the Compiled Laws,* which explains the effect of the words "heirs" and "issue" where a remainder is to take effect upon the death of a person without heirs or issue; and in *section 2612,* which abolishes the rule in Shelley's case, as well as in other scattered sections.

The inquiry here is simply whether as to the lands in

question, not absorbed by the specific devises and bequests, the testator intended to die intestate. For it is only in case of such intestacy that the life estate can ever vest in the widow.—*2 Comp. L.,* § *2812.*

When we look at the whole will, we find that there is no property whatever over which the testator has not given the executors control. Every parcel of it not specifically devised or bequeathed is made subject to sale by them to carry out the purposes of the will. Lands might be, and apparently were required to be, disposed of for the advantage of the widow, in paying for the homestead, in securing her a permanent annuity, and possibly to raise the money to pay the taxes on the homestead during her life. Had she been left to take by intestacy in all the property, the homestead might have been disposed of in part, if exceeding the value allowed by law; the personal property, as appears from the case, would have been entirely lost to her; and unless the real estate was improved so as to be rentable, she would have been without any reliable income from any source. In this part of the country a life estate in unimproved property, without power to rent for definite periods, is rarely of any great value.

The testator, then, evidently had it in his mind to provide definitely and immediately for the comfort and support of his widow, and as there are three distinct bequests for her advantage, and these constitute the chief provisions of the will, the others being trifling in comparison, the inference is irresistible that, in the absence of some clear direction to the contrary, he must have intended that she should have no more than was thus given to her. Had he designed to give her any further share in his estate, it would have been most natural to say so. She was in his mind from first to last as the principal person to be provided for, and with all these special and precise directions

in her favor, it cannot be presumed he omitted any thing that he designed to insert for her benefit.

In the first clause of the will where a patent is required to be obtained for the homestead, the term "lawful heirs" is used to signify the kindred who were to take the estate in remainder. As they took subject to the widow's life estate in that particular parcel, this use of the term would not be conclusive to show that the same term used in the latter part of the will should necessarily give an immediate enjoyment to the exclusion of the life estate. But the use of these words as signifying kindred cannot be said to be of no weight, for it shows the popular meaning of the term was in the mind of the testator, and renders it very likely that in a second use of the same phrase, if another meaning was intended, there would be something to show it. Possibly if the residuary clause had been applied to specified and known parcels of land, which were not subject to be used for the purposes of the will, the question might have been different, but we can form no judgment on a theoretical case not before us. Here all the estate but the homestead was equally subject to disposal to satisfy the debts and bequests. It was a matter of contingency, what, if any, lands would be left for distribution. It would be a pretty broad use of terms to say, that an intention could exist to create an intestacy as to such a residue, which could only be ascertained after the will was carried into complete execution.

We think the presumptions are against any such design, and that the "lawful heirs" mentioned are the kindred previously referred to; and leaving it to "descend to his lawful heirs according to law," means simply, that the heirs, who appear to have been in different degrees of consanguinity, should take their shares in the order of representation prescribed by statute.

Being of opinion that the testator meant to dispose of all of his estate, we think the widow could claim no rights as to any of it as intestate property, and that she must be confined to her rights under the various provisions expressly made for her benefit by the will.

The decree was correct and should be affirmed, with costs.

CHRISTIANCY, Ch. J., and COOLEY, J., concurred.

GRAVES, J., did not sit in this case.