### TURNER v. BURR.

1. SAVING QUESTIONS FOR REVIEW—NECESSITY OF EXCEPTIONS—CASE DETERMINED ON PLEADINGS.

   Where a probate appeal was determined upon demurrer to the cross-petition filed below, the pleading and assignments of error on case made raise the real question to be determined in this court, and no exception to the giving of the judgment in the court below is necessary.

2. PLEADING — PROBATE COURTS — DEMURRER — RAISING LEGAL QUESTIONS.

   It is not contemplated that the practice of raising pure legal questions by demurrer, which prevails in our courts of general jurisdiction, shall be the practice in probate courts, since the overruling of a demurrer requires generally the framing and trial of an issue on the merits, and a remand of the record for that purpose. MONTGOMERY, J., dissenting.

3. APPEAL AND ERROR—RECORD—QUESTIONS CONSIDERED.

   Where the probate court enters an order for petitioner on sustaining a demurrer to a cross-petition, and the circuit court on appeal affirms the order on the record below, this court, upon case made, will treat the case as though testimony had

been offered to prove the facts set out in the cross-petition and had been excluded.

4. WILLS—CONSTRUCTION—"HEIRS"—EVIDENCE—INTENT OF TES-TATOR.

Where a will, after giving certain legacies, including one to testatrix's husband, provides that the remainder of the proceeds of the sale of the estate shall be distributed among the "lawful heirs" of testatrix "according to law," the husband of testatrix is entitled, under the statute of distribution, to take as an heir, and parol evidence is not admissible to show that testatrix did not so intend.

Case made from Kent; Perkins, J. Submitted April 27, 1905. (Docket No. 95.) Decided July 21, 1905.

Petition to the probate court by Salem T. Turner for a partial distribution of the estate of Sarah C. Turner, deceased. Helen M. Burr and others filed an answer in the nature of a cross-petition asking for a construction of the will of deceased. From an order sustaining a demurrer to the cross-petition, contestants appealed to the circuit court. There was judgment at the circuit for petitioner, and contestants assign error. Affirmed.

*Frank L. Carpenter*, for appellants.

*Burlingame, Belden & Orton* (*Cyrus E. Perkins*, of counsel), for appellee.

OSTRANDER, J. Sarah Chipman Turner died testate December 16, 1901, at her home, in the city of Grand Rapids, Mich. Her husband, Salem T. Turner, survived her. Her will was executed June 5, 1901, and by its terms, after requiring all of her property, real and personal, to be converted into money, and after distributing $17,000 in legacies to various persons, including one of $500 to her husband, it is provided:

"*Eleventh.* I direct that the remainder of the proceeds of the sale of my real and personal estate be distributed among my lawful heirs according to law."

The executors having paid debts and specific legacies, and having on hand a considerable residuary fund in money, the husband petitioned the probate court for an order directing a partial distribution; setting up that a moiety of the residuary estate belonged, under the terms of the will, to himself as one of the lawful heirs of his deceased wife. The answer of certain of the heirs denies that petitioner is an heir, within the meaning of the will, and denies that he is entitled to any portion of the residuary estate. The answer also takes the form of a cross-petition, and avers certain facts which, if true, seem conclusive of the main fact asserted—that testatrix did not mean that her husband should have any part of her estate except the specific legacy of $500, and that that was given him for fear that he might otherwise contest the will. To this cross-petition a demurrer was interposed by the husband, the matter was brought on for hearing upon the pleadings, and the probate court made an order for partial distribution, awarding one-half the sum distributed to the husband. An appeal was taken by the heirs to the circuit court, and, upon the record above indicated, the circuit court affirmed the order, and judgment to that effect was entered. A motion for a new trial was made, and was denied. Thereupon a case was made, settled, and certified to this court. The errors assigned are three in number—the first, directed to the point that the court erred in construing the will, the second, that it was error to affirm the order of the probate court; the third, that it was error to deny the motion for a new trial, and to refuse appellants' costs of the appeal to be paid out of the estate.

The record shows no exceptions taken to any ruling or determination of the circuit court, and it is urged by counsel for appellee that for this reason the case must be dismissed, upon the authority of *Wilkinson* v. *Earl*, 39 Mich. 626; *Wertin* v. *Crocker*, 47 Mich. 642. It was not necessary to take an exception to the giving of judgment in the court below. The pleadings and assignments of error raise the real question to be determined. *Hen-*

*derson* v. *City of Detroit*, 61 Mich. 378, 383.  We think it proper to say, however, that the practice pursued in this case would in most cases be open to objection.  In the brief for appellee it is said:

"Many of these statements are considered utterly untrue by the appellee, and are not admitted in any manner, except so far as the demurrer of the appellee in the probate court would, for the purpose of the argument upon demurrer, admit the truth of the statement in the cross-petition."

It is not contemplated that the practice of raising pure legal questions by demurrer, which prevails in our courts of general jurisdiction, shall be the practice in probate courts, since the overruling of a demurrer requires generally the framing and trial of an issue on the merits, and a remand of the record for that purpose.  We treat the present case precisely as though appellants had offered, first in the probate court, and later in the circuit court on appeal, testimony to prove the facts set out in the cross-petition, and such testimony had been by the circuit court excluded.

It is important to learn the precise issues raised by counsel for appellants, and in this we are aided by stating some things which he does not claim.  He does not claim that there is any ambiguity in the words or terms used in the will, unless he may be held to the contention that the word "heirs," when used in a will, is always of doubtful meaning.  Nor is it claimed but that the clause of the will in question evidences an intention to have the residue of the estate, which is or will be in the form of money, "distributed" "according to law."  What counsel does claim is that the testatrix did not mean that her husband should take any part of the residue of her estate, nor to include him in the term "my lawful heirs," but intended and understood that term to include only her kindred by blood.  This intention, it is said, is evidenced (1) by the legal meaning of the words used in the clause under consideration, if not (2) by certain facts sought to be proved.  He

seeks to introduce the testimony of the person who drew the will, to whom it is claimed she stated at the time the will was prepared "that she did not wish [her husband] to have any part of her estate, but for fear he might contest and break her will, she had determined to bequeath him a legacy of $500," and testimony showing relations between testatrix and her husband to explain and make reasonable her said alleged purpose. Conceding, as we may, the general rule in this State to be that the circumstances surrounding the making of a will, the condition of the estate, and the relationship of beneficiaries to the decedent may all be considered in determining the intention of the testator, and that this court has, in considering similar clauses in wills, held that the word "heirs," used in them, was not very conclusive of testator's intent (*Hascall* v. *Cox*, 49 Mich. 435; *Bailey* v. *Bailey*, 25 Mich. 185), it is nevertheless true that the intent of the testator has been found, whenever possible, in the language of the will itself, and, if affording the means for a reasonable interpretation and one generally harmonious, parol evidence of intention has not been received.

The case before us is not a difficult one, and we have had the benefit of excellent briefs and of oral argument. There survived testatrix neither lineal descendants, father, mother, brother, nor sister. Her husband and the children and grandchildren of deceased brothers and sisters claim the estate. Her directions, found in the will, were to convert her estate into money. The estate is a considerable one, valued at upwards of $50,000, and the specific legacies amount to $17,000. The debts were less than $1,000. The residuary estate is therefore the greater part of the whole, and, unless there is to be found some limitation in the words, "my lawful heirs," is to be disposed of, by direction of the testatrix, as an intestate estate would be. There is but one method of *distributing* such an estate *according to law*, and that is to apply the statute of distributions. Applying that statute, the property will be distributed one-half to the husband, and the other half to

the children of any deceased brother or sister by right of representation.     The decree appealed from so ordered. But counsel says the designated beneficiaries of the distribution directed are not the persons of the statute of distributions, but are " the lawful heirs " of the testatrix; these are her kindred by blood, of whom the husband is not one. If we adopt this view, we must abandon the position that testatrix intended a *distribution* according to the statute, or we must hold that the intention cannot be given effect, because there is no statute provision for *distributing*, the husband being alive, which does not, under the circumstances here, include him as a distributee.     There is abundant authority for holding that the will evidences an intention, which is entirely agreeable with fair construction of the language used—the estate being all personal property, and the direction being to distribute according to law —to use the word "heirs" to designate the persons who under the statute take personal property.     We may go further.     The term used is "my lawful heirs."     In English law the word "heirs" has always meant the person succeeding to the title to real estate on the death of another —one who succeeds to the title by force of the law.     A common definition is, "He upon whom the law casts an estate of inheritance immediately on the death of the owner."     Under our statute governing the descent of real property, the husband is within the definition given.     Indeed, in this case the same persons, and taking in the same proportions, are designated in both of the statutes referred to.     We are not willing, and are of opinion that we are not permitted, to look further.     There being no ambiguity appearing upon the face of the instrument, the testimony of the scrivener who drew the will was not admissible. *Defreese* v. *Lake*, 109 Mich. 415 (32 L. R. A. 744).

The decree of the probate court and the judgment of the circuit court are in accordance with the precise directions found in the will, and give effect to the expressed intentions of the testatrix.

Judgment is affirmed, with costs of this court to the appellee.

MOORE, C. J., GRANT, and BLAIR, JJ., concurred.

MONTGOMERY, J.   I concur in the result reached in the foregoing opinion.   I do not agree that the practice pursued was objectionable.