*In re* CHURCHILL'S ESTATE.

1. WILLS—VESTING OF ESTATES FAVORED UNLESS AGAINST INTENT OF TESTATOR.

   Although the vesting of estates at the earliest possible moment is favored in the law, said rule may not be applied to frustrate the manifest intent of a testator in disposing of his estate by will.[1]

2. SAME—CONSTRUCTION—INTENT.

   In the construction of a will, the intent of the testator must govern, and when the intent is found from the four corners of the instrument the duty rests upon the court to effectuate it if it may lawfully be done.[2]

3. SAME—INTENT OF TESTATOR GOVERNS VESTING OF ESTATE.

   Where, upon an examination of a will, it clearly appears that it was the intent of the testator that the estate should vest only on the happening of a particular event, such intent will govern; but where such intent does not clearly appear the estate will vest on the death of the testator.[3]

[1]Wills, 40 Cyc. p. 1650, 1651; [2]Id., 40 Cyc. p. 1386; [3]Id., 40 Cyc. p. 1650, 1667.

On intent of testator as controlling factor in construction of will, see note in 11 L. R. A. (N. S.) 67.

4. Same—Vesting of Estate Postponed Until Death of Testator's Daughter.

> Where a will, after giving a watch and $500 to the son of an old friend of testator, left the entire income of the estate available for the maintenance of an incompetent daughter, and further provided that "at the death" of said daughter all of the property then held by the trustee "shall thereupon belong to and vest absolutely" in the persons named, an undivided two-tenths, left to be disposed of under the laws of Michigan, vested in the heir at law of testator at the death of the daughter, rather than in the daughter at the death of testator.[4]

Case-made from Bay; Houghton (Samuel G.), J. Submitted December 4, 1924.   (Docket No. 92.)   Decided April 3, 1925.

Annie M. Elliott and another appealed from an order of distribution of the estate of Worthy L. Churchill, deceased.   Judgment sustaining the order of the probate court.   Contestants appeal.   Affirmed.

*Weadock & Weadock*, for appellants.

*Stevenson, Carpenter, Butzel & Backus* (*Thomas G. Long*, of counsel), for appellee.

In this case we have before us the will of Worthy L. Churchill bearing date January 3, 1913, which, omitting the attestation, is as follows:

"I, Worthy L. Churchill, of Bay City, in the county of Bay, and State of Michigan, being in good health, and of sound mind and memory, do make, declare and publish this, as and for my last will and testament, hereby revoking all other wills heretofore made by me, that is to say:

"*First:* I hereby nominate and appoint as executors of this, my will, Eugene Fifield, of Bay City, Michigan; Wendell D. Holmes, of Bay City, Michigan, and H. M. Gillett, of Bay City, Michigan.

---

[4]Wills, 40 Cyc. p. 1667.

"*Second:* I give, devise and bequeath to Edward Saunders, of Davenport, Iowa, the son of my old friend, Doctor Saunders, now deceased, and of Sarah Saunders, now living, my gold watch and chain, and also the sum of five hundred dollars ($500.00), which I request him to invest and with the earnings keep the said watch in repair and good order.

"*Third:* After the payment of my funeral expenses, my personal debts, and the expenses of administration of my estate, and the special bequest to Edward Saunders, and providing for the comfortable support of my daughter until the trust estate herein created shall pay a sufficient revenue for that purpose, I give, devise and bequeath all the rest, residue and remainder of the property of which I shall die seized, of every name and description, and wherever situated, unto the Security Trust Company of Detroit, Michigan, in trust, nevertheless, for the use and benefit of my daughter, Florence Churchill, an incompetent person, as herein provided.    The said trustee shall take and hold title to the said property, and shall preserve the same, and shall collect and receive the rents, issues and income thereof, and shall after the payment of the proper costs and expenses of the trust, pay such rents, issues and income, semi-annually, to the guardian of my said daughter, Florence Churchill, for her use, benefit, maintenance and support, during her life.

"And I do hereby authorize and empower the said trustee, in its discretion, to sell and convey such property, or any part thereof, and to convert the same into money, and to invest and reinvest the same in such manner as may be proper and advisable, and in such case the rents, issues and income thereof shall be applied, and the principal thereof be disposed of in the same manner as the property originally so held.    It is my desire that my daughter shall have all the comforts and care that the income of my estate will provide, and that she shall be supported in the same degree of comfort in which she was supported by me during my lifetime, and that, if the same will promote her comfort and happiness, she shall be permitted to maintain the homestead now occupied by me in Bay City, Michigan, or another suitable homestead in its place, and shall have all the service and attendance necessary for that purpose.    In such case, the title

to such homestead shall be held by said trustee, and the use of the same by my daughter shall be credited to the said trustee in lieu of the rents, issues and income thereof. In respect to such of the furniture and furnishings in my homestead, or such other personal chattels, as may be of a nature to be conveniently used by my daughter, or by her guardian for the comfort of my daughter, I direct that the same shall be left in the possession of the guardian of my said daughter, for the purpose aforesaid, and that my trustee shall not be chargeable therewith. If the net income of said trust estate shall at any time prove insufficient for my daughter's support, in the manner aforesaid, then I direct said trustee, or the guardian of my said daughter, to apply to the proper court having jurisdiction of said trust estate, for an order in the premises, and my said trustee is hereby empowered to devote so much of the principal fund of such trust estate to the support and maintenance of my daughter as said court shall deem proper, due regard being had to insure the continuance of an income to my said daughter during her life.

"If, at any time, the guardian of my said daughter shall find that the annual income of said trust estate is in excess of the proper needs and requirements of my daughter after providing liberally for all comforts and luxuries which can reasonably increase her happiness, then I direct that the amount of such excess, if any, shall be returned to, or retained by the said trustee, and shall be added to the principal fund of said trust.

"*Fourth:* I direct my executors to pay my personal debts and funeral expenses, and direct and empower them to surrender to the guardian of my daughter, Florence Churchill, the possession of my homestead, if it is desired to maintain the same, together with the furniture and furnishings in my homestead, and such other chattels as may be required in the opinion of said guardian for the comfort and happiness of my said daughter. I further empower and direct my executors to pay to such guardian during the administration of my estate such sums as may be necessary for the comfortable support of my daughter, until such time as the trustee hereinbefore appointed shall receive sufficient property for that purpose. I further

empower the said executors to convert into cash, by sale and conveyance or otherwise, any part of my property which in their judgment is not of a nature to be properly or profitably devoted to the use of my daughter, or held as a part of the trust hereinbefore created.    I further direct my executors to pay over and deliver to the trustee hereinbefore appointed, from time to time, during the administration of my estate, such property, securities and funds as may not be needed in the administration of my estate, to the purpose that the said trust fund shall be created and an income accrue therefrom, as soon as possible after my decease.    My executors shall have the right and power to sell and convey both my real and personal estate, and any interest therein.

*"Fifth:* The said Security Trust Company, as trustee, shall prepare and furnish every six months, from the time the trust estate shall come to its hands, an inventory of all the property comprised in such trust estate, and a statement in detail of the receipts and disbursements for the preceding six months, one copy to be delivered to my daughter, and one copy to her guardian.

*"Sixth:* The said Security Trust Company, as such trustee, shall file its reports and accounts annually, in the court having jurisdiction of said trust estate, and such account shall be annually audited and allowed or disallowed by such court, and such court shall, in connection with such accounting, fix the compensation from year to year to be allowed said trustee.    The property and securities belonging to said trust estate, and the books and records kept by the said trustee, concerning the same, shall be open to the inspection of the executors of this, my will, and of the guardian of my daughter, or their, or his duly appointed agent, at any time during business hours.

*"Seventh:* At the death of my said daughter the trust estate herein created shall forthwith terminate, and all of the property then held by any said trustee, or in the possession of the guardian of my daughter, shall thereupon belong to and vest absolutely in the following persons, viz.:

*"a.* If my daughter, Florence Churchill, shall die leaving issue, all of said property shall belong to and vest absolutely in the issue of my said daughter.

"*b.* If my said daughter, Florence Churchill, shall die without issue, then the said property shall belong to and vest in the following persons, viz.:

"An undivided one-tenth part thereof to my sister-in-law, Annie M. Elliott, of Minneapolis, Minnesota, to her and her heirs forever.

"An undivided three-tenths part thereof to Clara Webber, daughter of John Webber, of Stafford, Genesee county, New York, to her and her heirs forever.

"An undivided one-tenth part thereof to Mary Stevens, widow of Sylvester S. Stevens, now living at Antioch, California, to her and her heirs forever.

"An undivided two-tenths part thereof to my nephew, Howard L. Churchill, of Alpena, Michigan, to him and his heirs forever.

"An undivided one-tenth part thereof to Nellie Church Cornwell, of Buffalo, New York, daughter of John Webber, of Stafford, Genesee county, New York, to her and her heirs forever.

"This leaves an undivided two-tenths part of the remainder of my estate, to be disposed of under the laws of the State of Michigan, unless I should make some other provision by codicil or otherwise.

"*Eighth:* I nominate and appoint Clara Webber, of Stafford, Genesee county, New York, testamentary guardian of the person of my said daughter, and of her estate, when and as paid over by my representatives and said trustee, and I wish her to stand *in loco parentis* to my said daughter, and to surround her with all the care and comfort that she is able to do under the provisions furnished to her by this will."

The will was prepared by the late H. M. Gillett of Bay City, one of the able lawyers of the State. Mr. Churchill died February 5, 1913, and the will was admitted to probate and the estate administered. The trust fund amounting to about $475,000 was turned over to the Security Trust Company. The incompetent daughter, Florence, was testator's only child and was of the age of 37 years at the time of his death. She died December 13, 1920. In addition to the amount furnished for the maintenance of the daughter, the trust fund had earned some $80,000 which had

been added to the *corpus*.   The trustee filed its final
account in probate court and asked for a construction
of the will and an order of distribution of the assets
in its hands.   This controversy then developed.   It
grows out of the last paragraph of the seventh clause
of the will.   Annie M. Elliott was the maternal aunt
of testator's daughter Florence; Joseph A. Mont-
gomery was her maternal uncle by the half blood;
they were the next of kin of Florence; they will here-
after be referred to as appellants.   Howard L.
Churchill was the only nephew of testator.   He will
be hereafter referred to as appellee.   It is the claim
of appellants that under a proper construction of this
will the two-tenths of the residue mentioned in the
paragraph in question on the death of testator at once
vested in Florence as sole heir at law of testator under
the laws of the State of Michigan, and upon her death
passed to them as her next of kin.   It is the claim of
appellee that under a proper construction of this will
the two-tenths did not vest in Florence on the death
of testator and did not vest (except in the trustee)
until the death of Florence when it vested in him as
sole heir at law of testator.   Both the probate and
circuit courts sustained the contentions of the appellee
and the case is brought here on case-made.

FELLOWS, J. (*after stating the facts*).   We have
been furnished able briefs in this case and have had
the assistance of well considered arguments.   Leading
cases from England and this country have been
selected and assembled for our consideration.   They
have all been read, and we agree with both counsel
that the cases from other jurisdictions present an
irreconcilable conflict of authority.   We shall not at-
tempt the impossible, the task of distinguishing them,
nor shall we weigh them in the scales to determine to
a nicety just where the weight of authority rests.
Rarely do we find two wills exactly alike and each will

which comes before us must be considered by itself aided by such judicial decisions as may be in point or by analogy applicable.   We shall call to our aid in the instant case only the former holdings of this court as they afford ample guide to the solution of the problem presented.

The rule is well recognized in this court that the vesting of estates at the earliest possible moment is favored in the law and uniformly this court has held that estates given by will take effect and become vested on the death of the testator where a contrary intent does not appear.   But the rule favoring vesting of estates at the earliest possible moment must not be applied to frustrate the manifest intent of the testator. In the construction of wills the cardinal canon, the guiding polar star, is that the intent of the testator must govern; and when that intent is found from the four corners of the instrument the duty rests upon the court to effectuate it if it may lawfully be done.

This court, like other courts of last resort, has had before it for construction a great variety of wills. We can not, of course, review all of the cases but we shall attempt to review some of our cases which will be of aid in the task before us.   We should begin with *In re Shumway's Estate,* 194 Mich. 245 (L. R. A. 1918A, 578), because appellants insist that it is controlling of the case before us.   In that case the testator gave a life estate to his wife and "after her decease" the remainder to his legal heirs "according to the provisions of the statute."   The will itself showed testator's familiarity with the statute and it was inferable that he drew the will with the statute before him or at least that he had its provisions in mind.   This clearly demonstrated that the testator intended that the property should go according to its provisions.   The only things which could be urged against this outstanding fact were that one-half the

remainder went to the life tenant and the use of the words "after her decease." But the testator had the undoubted right to bestow one-half the remainder upon the life tenant if he so desired and the use of the words "after her decease" or words of similar purport is quite common in wills and standing alone usually have reference to the time of enjoyment rather than the time of vesting. The *Shumway Case* is somewhat similar to *Hascall* v. *Cox*, 49 Mich. 435, and *Turner* v. *Burr*, 141 Mich. 106. In none of these cases, however, was there the full and complete provision for support found in the will now before us or in the will before the court in the case of *Bailey* v. *Bailey*, 25 Mich. 185. In that case the widow was given the life use of the homestead, consisting of eleven city lots in the city of Lansing, with remainder "to my lawful heirs." Provision was also made for her in other portions of the will. Mr. Justice CAMPBELL, speaking for the court, said:

"The testator, then, evidently had it in his mind to provide definitely and immediately for the comfort and support of his widow, and as there are three distinct bequests for her advantage, and these constitute the chief provisions of the will, the others being trifling in comparison, the inference is irresistible that, in the absence of some clear direction to the contrary, he must have intended that she should have no more than was thus given her. Had he designed to give her any further share in his estate, it would have been most natural to say so. She was in his mind from first to last as the principal person to be provided for, and with all these special and precise directions in her favor, it can not be presumed he omitted anything that he designed to insert for her benefit."

The late case of *In re Patterson's Estate*, 227 Mich. 486, should also be considered. In that case the words "at her decease" and "surviving" were relied upon as showing an intent to defer the vesting of the estate.

These words were held not to be sufficient, and in so holding we but followed *Rood* v. *Hovey,* 50 Mich. 395, and *Porter* v. *Porter,* 50 Mich. 456, which cases we held had established a rule of property.     In *Curtis* v. *Fowler,* 66 Mich. 696, the wife was given an estate for life "and at her decease" to their daughter.     It was held that the estate vested in the daughter and descended to her heirs.     Numerous other cases will be found which, following the rule that the law favors the early vesting of estates, hold that the estate vests at the earliest possible moment, *i. e.,* at the death of the testator.     We cite but a portion of them: *Van Gallow* v. *Brandt,* 168 Mich. 642; *Union Mutual Ass'n* v. *Montgomery,* 70 Mich. 587 (14 Am. St. Rep. 519) ; *In re Mallary's Estate,* 127 Mich. 119; *McCarty* v. *Fish,* 87 Mich. 48; *Toms* v. *Williams,* 41 Mich. 552; *Porter* v. *Osmun,* 135 Mich. 361 (3 Ann. Cas. 687) ; *Hibler* v. *Hibler,* 104 Mich. 274.     But in none of these cases, nor in others in this court so holding which we have examined, does it clearly appear from the four corners of the will that the intent of the testator was to the contrary.

We will now examine some of the cases in which it has been held that the estate did not vest upon the death of the testator.     In *Re Lamb's Estate,* 122 Mich. 239, the estate was given to the brothers and sisters of testatrix, naming them, with the following proviso :

"But in case of the death of any of the above-named legatees previous to the probating or execution of this, my last will and testament, then I desire, will, and bequeath that the share of such deceased brother or sister shall revert to, and become the property of, the children of said deceased legatee."

Carlton Ray, one of the brothers, died after the will had been admitted to probate but before the estate was settled.     He had assigned his interest in the

estate to his wife and the question involved was when the estate vested.  It was held by the court that the language above quoted established the intent of the testator to defer the vesting of the estate until the estate was settled.  In *Fitzhugh* v. *Townsend,* 59 Mich. 427, the will provided for specific legacies, placed the residue in the hands of trustee with directions to provide for the education of a granddaughter and the payment to her of the income during her life with remainder over to her issue; but in case of her death without issue the estate was to go to the brothers and sisters of the testatrix equally and

"to the children of such of them as shall be no longer living so that the children of each of the deceased shall take the share—to be equally divided among them if there be more than one—to which the deceased parent would have been entitled if living."

It was held (quoting from the syllabus) :

. "That the manifest intent of the testatrix was, that no estate should vest in any one, outside of her granddaughter and her issue, until the event of the granddaughter's death, and that in case she should die without issue, only the living brothers and sisters, and the living issue of those dead, should inherit."

In the opinion in this case it was stressed that the estate was so placed that the granddaughter could not alien it and that it could not be presumed that the testatrix intended collateral heirs to have such an interest as they could convey.   See, also, *Hunter* v. *Hunter,* 160 Mich. 218; *L'Etourneau* v. *Henquenet,* 89 Mich. 428 (28 Am. St. Rep. 310) ; *Plant* v. *Weeks,* 39 Mich. 117; *Garman* v. *Hawley,* 132 Mich. 321; *Hadley* v. *Henderson,* 214 Mich. 157; *Rozell* v. *Rozell,* 217 Mich. 324.   A consideration of our own cases establishes the rule that where upon an examination of the will it clearly appears that it was the intent of the testator that the estate should vest only on the

happening of a particular event such intent will govern; where such intent does not clearly appear the estate will vest on the death of the testator.     In other words, the intent will be given effect if clearly apparent, otherwise rules of construction will be applied.

In the will before us the testator after giving a watch and $500 to the son of an old friend left his entire estate, aggregating nearly half a million dollars, for the support, care and comfort of his unfortunate daughter.     He provided for her maintenance during the settlement of the estate, the use of the entire income thereafter, and if needed, the *corpus* could have been drawn on; he appointed a guardian who should stand *in loco parentis;* if she should be cured of her malady—a contingency of remote possibility but which he nevertheless provided for—and marry and have issue, such issue should take the entire remaining estate.     From first to last in the preparation of his will, she was constantly in his mind.     Can it be said in view of this fact and the provisions he made for her that he also intended she should "under the laws of the State of Michigan" take a vested estate in two-tenths of the residue?     We think not, and we could well rest decision on the language of Justice CAMPBELL in *Bailey* v. *Bailey, supra.*

But we need not stop there; the language of clause seven itself clearly shows the intent of the testator: "at the death of my said daughter" all of the property "then" held by the trustee "shall thereupon belong to and vest absolutely," etc.     We have pointed out that the words "at the death," "after her decease," and words of like purport do not, standing alone, postpone the vesting of the estate.     Many courts so hold as to the word "then," and, if these words stood alone, it would be very doubtful if they established an intent to postpone the vesting.     But they fix a time to

which the subsequent words "thereupon * * * vest," apply. We have pointed out that the will was prepared by an able lawyer. He was familiar, must have been familiar, with the holdings of this court upon the question of when an estate vests in the absence of specific language, and with that knowledge he used the words shall "thereupon * * * vest." We must presume he used these words deliberately, purposely, for he was no novice in the law. Shall "thereupon vest:" Did not these words as clearly show an intent as though he had used the words "at that time" instead of the word "thereupon?" In the case of *In re Blodgett's Estate*, 197 Mich. 455, it was said by this court:

"It is true, as contended by appellee, that the law favors vested estates, but it does not preclude the creation of vested estates subject to be divested upon the happening of a future event. It is true that the law provides a manner of distribution and descent of property, but this does not preclude, except as to the wife, the willing of the entire property to strangers. It is true that the law does not favor joint tenancies, but it nevertheless permits their creation. * * * By the third clause the testator gave to his wife a life estate of the land in question. He then provided that 'after her death' it should go to his children, naming them, 'or the survivors of them *living at that time.*' Is the intent of the testator clear from this language? If so, our inquiry, so far as this clause standing alone is concerned, is at an end. We think it is. Clearly the remainder, not the enjoyment of it, went to the survivors of his children living at that time. The words 'at that time' referred to, and only to, the time of the wife's death. Any other construction would do violence to the language employed; any other construction would require us to read out of this clause the words 'or the survivors of them living at that time.' This we cannot do. The will as written is the will before us. We cannot subtract from or add to its language; all parts must be considered by us and given effect.

Otherwise we substitute our will for that of the testator."

From what has been said it follows that the judgment must be affirmed.

McDONALD, C. J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.