We have been furnished able briefs in this case and have had the assistance of well considered arguments. Leading cases from England and this country have been selected and assembled for our consideration. They have all been read, and we agree with both counsel that the cases from other jurisdictions present an irreconcilable conflict of authority. We shall not attempt the impossible, the task of distinguishing them, nor shall we weigh them in the scales to determine to a nicety just where the weight of authority rests. Rarely do we find two wills exactly alike and each will *Page 155 
which comes before us must be considered by itself aided by such judicial decisions as may be in point or by analogy applicable. We shall call to our aid in the instant case only the former holdings of this court as they afford ample guide to the solution of the problem presented.
The rule is well recognized in this court that the vesting of estates at the earliest possible moment is favored in the law and uniformly this court has held that estates given by will take effect and become vested on the death of the testator where a contrary intent does not appear. But the rule favoring vesting of estates at the earliest possible moment must not be applied to frustrate the manifest intent of the testator. In the construction of wills the cardinal canon, the guiding polar star, is that the intent of the testator must govern; and when that intent is found from the four corners of the instrument the duty rests upon the court to effectuate it if it may lawfully be done.
This court, like other courts of last resort, has had before it for construction a great variety of wills. We can not, of course, review all of the cases but we shall attempt to review some of our cases which will be of aid in the task before us. We should begin with In re Shumway's Estate, 194 Mich. 245 (L. R. A. 1918A, 578), because appellants insist that it is controlling of the case before us. In that case the testator gave a life estate to his wife and "after her decease" the remainder to his legal heirs "according to the provisions of the statute." The will itself showed testator's familiarity with the statute and it was inferable that he drew the will with the statute before him or at least that he had its provisions in mind. This clearly demonstrated that the testator intended that the property should go according to its provisions. The only things which could be urged against this outstanding fact were that one-half the *Page 156 
remainder went to the life tenant and the use of the words "after her decease." But the testator had the undoubted right to bestow one-half the remainder upon the life tenant if he so desired and the use of the words "after her decease" or words of similar purport is quite common in wills and standing alone usually have reference to the time of enjoyment rather than the time of vesting. The Shumway Case is somewhat similar toHascall v. Cox, 49 Mich. 435, and Turner v. Burr, 141 Mich. 106
. In none of these cases, however, was there the full and complete provision for support found in the will now before us or in the will before the court in the case of Bailey v.Bailey, 25 Mich. 185. In that case the widow was given the life use of the homestead, consisting of eleven city lots in the city of Lansing, with remainder "to my lawful heirs." Provision was also made for her in other portions of the will. Mr. Justice CAMPBELL, speaking for the court, said:
"The testator, then, evidently had it in his mind to provide definitely and immediately for the comfort and support of his widow, and as there are three distinct bequests for her advantage, and these constitute the chief provisions of the will, the others being trifling in comparison, the inference is irresistible that, in the absence of some clear direction to the contrary, he must have intended that she should have no more than was thus given her. Had he designed to give her any further share in his estate, it would have been most natural to say so. She was in his mind from first to last as the principal person to be provided for, and with all these special and precise directions in her favor, it can not be presumed he omitted anything that he designed to insert for her benefit."
The late case of In re Patterson's Estate, 227 Mich. 486, should also be considered. In that case the words "at her decease" and "surviving" were relied upon as showing an intent to defer the vesting of the estate. *Page 157 
These words were held not to be sufficient, and in so holding we but followed Rood v. Hovey, 50 Mich. 395, and Porter v.Porter, 50 Mich. 456, which cases we held had established a rule of property. In Curtis v. Fowler, 66 Mich. 696, the wife was given an estate for life "and at her decease" to their daughter. It was held that the estate vested in the daughter and descended to her heirs. Numerous other cases will be found which, following the rule that the law favors the early vesting of estates, hold that the estate vests at the earliest possible moment, i. e., at the death of the testator. We cite but a portion of them: Van Gallow v. Brandt, 168 Mich. 642; UnionMutual Ass'n v. Montgomery, 70 Mich. 587 (14 Am. St. Rep. 519);In re Mallary's Estate, 127 Mich. 119; McCarty v.Fish, 87 Mich. 48; Toms v. Williams, 41 Mich. 552; Porter v.Osmun, 135 Mich. 361 (3 Ann. Cas. 687); Hibler v. Hibler,104 Mich. 274. But in none of these cases, nor in others in this court so holding which we have examined, does it clearly appear from the four corners of the will that the intent of the testator was to the contrary.
We will now examine some of the cases in which it has been held that the estate did not vest upon the death of the testator. In Re Lamb's Estate, 122 Mich. 239, the estate was given to the brothers and sisters of testatrix, naming them, with the following proviso:
"But in case of the death of any of the above-named legatees previous to the probating or execution of this, my last will and testament, then I desire, will, and bequeath that the share of such deceased brother or sister shall revert to, and become the property of, the children of said deceased legatee."
Carlton Ray, one of the brothers, died after the will had been admitted to probate but before the estate was settled. He had assigned his interest in the *Page 158 
estate to his wife and the question involved was when the estate vested. It was held by the court that the language above quoted established the intent of the testator to defer the vesting of the estate until the estate was settled. InFitzhugh v. Townsend, 59 Mich. 427, the will provided for specific legacies, placed the residue in the hands of trustee with directions to provide for the education of a granddaughter and the payment to her of the income during her life with remainder over to her issue; but in case of her death without issue the estate was to go to the brothers and sisters of the testatrix equally and
"to the children of such of them as shall be no longer living so that the children of each of the deceased shall take the share — to be equally divided among them if there be more than one — to which the deceased parent would have been entitled if living."
It was held (quoting from the syllabus):
"That the manifest intent of the testatrix was, that no estate should vest in any one, outside of her granddaughter and her issue, until the event of the granddaughter's death, and that in case she should die without issue, only the living brothers and sisters, and the living issue of those dead, should inherit."
In the opinion in this case it was stressed that the estate was so placed that the granddaughter could not alien it and that it could not be presumed that the testatrix intended collateral heirs to have such an interest as they could convey. See, also, Hunter v. Hunter, 160 Mich. 218; L'Etourneau v.Henquenet, 89 Mich. 428 (28 Am. St. Rep. 310); Plant v. Weeks,39 Mich. 117; Garman v. Hawley, 132 Mich. 321;Hadley v. Henderson, 214 Mich. 157; Rozell v. Rozell, 217 Mich. 324
. A consideration of our own cases establishes the rule that where upon an examination of the will it clearly appears that it was the intent of the testator that the estate should vest only on the *Page 159 
happening of a particular event such intent will govern; where such intent does not clearly appear the estate will vest on the death of the testator. In other words, the intent will be given effect if clearly apparent, otherwise rules of construction will be applied.
In the will before us the testator after giving a watch and $500 to the son of an old friend left his entire estate, aggregating nearly half a million dollars, for the support, care and comfort of his unfortunate daughter. He provided for her maintenance during the settlement of the estate, the use of the entire income thereafter, and if needed, thecorpus could have been drawn on; he appointed a guardian who should stand in loco parentis; if she should be cured of her malady — contingency of remote possibility but which he nevertheless provided for — and marry and have issue, such issue should take the entire remaining estate. From first to last in the preparation of his will, she was constantly in his mind. Can it be said in view of this fact and the provisions he made for her that he also intended she should "under the laws of the State of Michigan" take a vested estate in two-tenths of the residue? We think not, and we could well rest decision on the language of Justice CAMPBELL in Bailey v. Bailey, supra.
But we need not stop there; the language of clause seven itself clearly shows the intent of the testator: "at the death of my said daughter" all of the property "then" held by the trustee "shall thereupon belong to and vest absolutely," etc. We have pointed out that the words "at the death," "after her decease," and words of like purport do not, standing alone, postpone the vesting of the estate. Many courts so hold as to the word "then," and, if these words stood alone, it would be very doubtful if they established an intent to postpone the vesting. But they fix a time to *Page 160 
which the subsequent words "thereupon * * * vest," apply. We have pointed out that the will was prepared by an able lawyer. He was familiar, must have been familiar, with the holdings of this court upon the question of when an estate vests in the absence of specific language, and with that knowledge he used the words shall "thereupon * * * vest." We must presume he used these words deliberately, purposely, for he was no novice in the law. Shall "thereupon vest:" Did not these words as clearly show an intent as though he had used the words "at that time" instead of the word "thereupon?" In the case of In reBlodgett's Estate, 197 Mich. 455, it was said by this court:
"It is true, as contended by appellee, that the law favors vested estates, but it does not preclude the creation of vested estates subject to be divested upon the happening of a future event. It is true that the law provides a manner of distribution and descent of property, but this does not preclude, except as to the wife, the willing of the entire property to strangers. It is true that the law does not favor joint tenancies, but it nevertheless permits their creation. * * * By the third clause the testator gave to his wife a life estate of the land in question. He then provided that 'after her death' it should go to his children, naming them, 'or the survivors of them living at that time.' Is the intent of the testator clear from this language? If so, our inquiry, so far as this clause standing alone is concerned, is at an end. We think it is. Clearly the remainder, not the enjoyment of it, went to the survivors of his children living at that time. The words 'at that time' referred to, and only to, the time of the wife's death. Any other construction would do violence to the language employed; any other construction would require us to read out of this clause the words 'or the survivors of them living at that time.' This we cannot do. The will as written is the will before us. We cannot subtract from or add to its language; all parts must be considered by us and given effect. *Page 161 
Otherwise we substitute our will for that of the testator."
From what has been said it follows that the judgment must be affirmed.
McDONALD, C.J., and CLARK, BIRD, SHARPE, MOORE, STEERE, and WIEST, JJ., concurred.