TAYLOR *et al. v.* JACKSON *et al.*

(In Banc. Feb. 8, 1943.)

[12 So. (2d) 144. No. 35202.]

442

SMITH, C. J., and GRIFFITH, J., dissenting.

**L. F. Easterling** and **T. S. Bratton**, both of Jackson, for appellants.

McClendon & Edwards and **E. W. Stennett**, all of Jackson, for appellees.

444

446

**McGehee, J.**, delivered the opinion of the court.

This is a contest among collateral kindred in a partition suit for the sale and division of the proceeds resulting from such sale of a certain house and lot in the City of Jackson which belonged to one Lillie Brown, who died intestate and without leaving any heirs at law surviving her other than the collateral kindred who are the parties to this suit, three of whom, John Henderson, Ann Courtney and Ella Jackson are first cousins of the whole-blood and the remainder of them first cousins of the half-blood, unless it be true that although Minerva Henderson, an illegitimate, the mother of the said John Henderson, Ann Courtney and Ella Jackson, was shown to have had the same father and mother as did George Wright, who predeceased his daughter, the said Lillie Brown, her said children are nevertheless the same kin to the said Lillie Brown as are the children of one Lizzie Rhodes and Amanda Hicks respectively, it being shown that the said Lizzie Rhodes and Amanda Hicks were also illegitimate

and had the same mother as did Minerva Henderson and George Wright but not the same father.

In other words, Elza Wright was the mother of George Wright, Minerva Henderson, Lizzie Rhodes and Amanda Hicks, all four of whom were illegitimate, but George Wright, father of the intestate Lillie Brown who owned the property in question, and Minerva Henderson had the same father, one Wesley Wright, whereas Lizzie Rhodes and Amanda Hicks, children of the said Elza Wright, as aforesaid, had a father whose name is unknown, but the proof discloses that Wesley Wright, the father of the said George Wright and Minerva Henderson, was not their father. It appears that Elza Wright and Wesley Wright lived together as slaves in the State of Virginia; that Elza later moved to Mississippi, bringing with her two children, George Wright and Minerva Henderson (nee Minerva Wright); that Wesley Wright, the father of these two children, remained in Virginia, whether voluntarily or involuntarily is neither shown nor material; and it further appears that Lizzie Rhodes and Amanda Hicks (whose maiden names are not disclosed, but who did not bear the name of Wright) were born to Elza Wright after she moved to Mississippi. It does not appear that Elza Wright and Wesley Wright ever lived together after the slaves were emancipated, and it is conceded for the purpose of this decision that all of the four children of Elza Wright were illegitimates, whereas all of the parties to this litigation are admitted to be legitimate.

The result of the foregoing facts would mean that if George Wright, Minerva Henderson, Lizzie Rhodes and Amanda Hicks had all been legitimate, that is to say, born in wedlock to the said Elza Wright, the children of the said Minerva Henderson would unquestionably be entitled to inherit the property in question from the daughter of her full brother, George Wright, to the exclusion of the children of Lizzie Rhodes and Amanda Hicks, on the

ground that the said Lizzie Rhodes and Amanda Hicks would have been half-sisters of George Wright, whereas Minerva Henderson would be his whole sister.

The court below awarded the proceeds of the sale of the property in partition to the three children of the said Minerva Henderson to the exclusion of the children of Lizzie Rhodes and Amanda Hicks, as being three full blood first cousins of Lillie Brown, while the children of Lizzie Rhodes and Amanda Hicks were held to be only half first cousins of the said Lillie Brown; that is to say, the court below applied Section 1408, Code of 1930, in the same manner that he would have been required to decree the distribution of such proceeds had the parties to the partition proceeding all been children of legitimates, with George Wright and Minerva Henderson having a common father and mother and the said Lizzie Rhodes and Amanda Hicks having the same mother but a different father to that of the said George Wright and Minerva Henderson; which, statute provides that: "All illegitimates shall inherit from their mother, and from her other children, and from her kindred, according to the statutes of descent and distribution; and the children of illegitimates and their descendants shall inherit from the brothers and sisters of their father or mother, whether legitimate or illegitimate, and from their grandparents."

It will be noted that the statute says that "all illegitimates shall inherit from their mother, and from her other children, and from her kindred, *according to the statutes of descent and distribution*" (italics ours), and that when we look to what the Statutes of Descent and Distribution provide, we find that Section 1403, Code of 1930, reads as follows: "There shall not be, in any case, a distinction between the kindred of the whole and half-blood, except that the kindred of the whole-blood, in equal degree, shall be preferred to the kindred of the half-blood in the same degree." This statute giving the right of the whole blood to inherit to the exclusion of the half-blood, in equal de-

gree, has appeared in the Code at least since the Code of 1880 (sec. 1271), and being found in the code chapter on Descent and Distribution along with Section 1408, the question is whether or not the two statutes, being in pari materia, should not be construed together; and whether or not since Section 1403, giving whole-bloods the right to inherit to the exclusion of the half-blood, in equal degree, was not amended so as to except illegitimates and their children from the operation thereof when the latter statute, Section 1408, was enacted to enlarge the right of illegitimates to inherit property in this state, the children of an illegitimate are entitled to the benefit of said Section 1403 and to inherit through their mother by representation the property of a legitimate child of her whole-blood brother, an illegitimate, to the exclusion of the children of such brother's illegitimate half sisters.

The court below was of the opinion that kinship is a matter of blood, and in support of the correctness of such decree it should be observed that since Minerva Henderson had in her veins the blood of both the father and mother of George Wright, who was as aforesaid the father of the intestate Lillie Brown, whereas, Lizzie Rhodes and Amanda Hicks had in their veins the blood of the mother of the said George Wright, but not that of his father, it should follow that the children of Minerva Henderson were by blood closer related to the intestate owner of the property than were the children of the half-sisters of the said George Wright.

In Hutch. Code, p. 501, Act of Feb. 23, 1846, the statute governing the right of illegitimates to inherit property in this state read as follows: "Hereafter, all illegitimates shall inherit the property of their mothers, and from each other, as children of the half-blood, according to the Statutes of Descent and Distribution now in force in this state." Later, the words "as children of the half-blood" were eliminated from the statute, and they have not appeared in any of our codes subsequent to the enactment

of the general statute, many years ago, and now appearing as Section 1403, Code of 1930, giving those of the whole-blood the right to inherit to the exclusion of those of the half-blood. While this fact is not decisive, it is in the opinion of the writer persuasive in support of the view that the legislature in enacting this general statute intended that it should apply to illegitimates as well as to legitimates when determining blood relationship for the purpose of inheritance; that is to say, that instead of regarding all illegitimates as being on the same footing as half-bloods, the elimination of the words "as children of the half-blood" from the statute was for the purpose of enabling the rights of illegitimates inter sese to be determined on the same basis as if they were legitimate and some of them were related to the intestate as of the whole-blood and some of the half-blood.

It is true that if Elza Wright, as mother of the four illegitimates, had owned the property in question at the time of her death, through inheritance, or by deed or will, then her other three illegitimate children or their descendants would take the same by inheritance from her on an equal basis. But, in the instant case, under and by virtue of Section 1408, Code of 1930, the successful claimants in the court below trace their claim of title laterally from the intestate Lillie Brown to themselves by reason of their blood relationship to her, and not through a common ancestor. The parentage of their mother and George Wright is to be taken into account only for the purpose of determining such blood relationship. When that is done, we find that the term whole-blood as defined in Ballentine's Law Dictionary is "The blood or relationship of children who have both their parents in common;" and half-blood as therein defined is "The relationship between children who have but one of their parents in common."

It is to be conceded that the precise question involved in this case has not been heretofore decided in this state,

and no case has been called to our attention from any other jurisdiction which has determined the particular point here involved, nor have we been able to find the question discussed by the text-writers or in any of the court decisions in the research that we have been able to make in that regard. While no pronouncement of the law has been found which has a direct or controlling effect on the question, still many of the cases do serve to illustrate the fact that the progress of civilization has tended to ameliorate the condition of illegitimates, and the rigor of the common law doctrine which created the legal fiction that an illegitimate has no father, mother or other kindred, has been largely abrogated by statute. At common law an illegitimate child could not inherit from its own mother and could leave no heirs save its own lineal descendants, but now in most jurisdictions they may inherit from their mother on an equal basis with her legitimate children, and illegitimate brothers and sisters may inherit from each other, and from the mother's other kindred. The theory that an illegitimate has no inheritable blood, and is without kin and without ancestry, is a relic of the past, and has never been more than a legal fiction invented to sustain the wholesome doctrine that it is odious to rear children out of wedlock. Illegitimacy, however, has always been the sin of the parent, not the child, yet the common law continued for centuries to frown upon the guiltless child with the disdain of a Pharisee, adhering to the fiction that it had no parent. But, in this enlightened age when statutes are in force enlarging the right of illegitimates to inherit, it is only in keeping with the spirit of these just and humane laws that children of illegitimates should inherit from the brothers and sisters of their mother on the same basis as they would if their mother and her brothers and sisters were legitimate, allowing due regard to the statutes which give kindred of the whole-blood the right to inherit to the exclusion of those of the half-blood, in equal degree.

Such a construction of these statutes can lead to no absurd result. For instance, in the case at bar, the decree of the court below which awarded the proceeds of the sale of the property in question to the children of Minerva Henderson gives to them no more than they would be entitled to receive under the law if their mother, Minerva Henderson, and George Wright, Lizzie Rhodes and Amanda Hicks, had all been legitimate, the first two having the same father and mother, and the latter two having the same mother but a father other than Wesley Wright. On the other hand, if the decree had awarded any of the proceeds of the sale to the children of Lizzie Rhodes and Amanda Hicks, as collateral kindred of George Wright and his intestate daughter, then the children of the said illegitimates, Lizzie Rhodes and Amanda Hicks, would receive an interest in property that they would have had no right to claim if their mothers and George Wright and Minerva Henderson had all been legitimate, without having the same father.

In the case of Davidson v. Brownlee et al., 114 Miss. 398, 75 So. 140, although not decisive of the point here involved, it is found that the court took into consideration the fact that Sections 1649, 1650, 1653, 1655, of the Code of 1906, similar to those now under consideration, contained in the chapter on Descent and Distribution, were in pari materia, and the court construed them together in holding that the illegitimate son of a sister of the whole-blood with intestate took the intestate's property to the exclusion of the legitimate children of the sister of the half-blood with intestate where both sisters predeceased the intestate and she died without children or descendants of children.

In the case of Henson et al. v. Johnson et al., 117 Okl. 87, 246 P. 868, there had been an allotment of land to Mary Johnson, an illegitimate daughter of Wash Henson, a Cherokee Indian, and a woman named Rachel, and it was held that Betty Tucker (nee Henson), being a full

sister of Mary Johnson, took the entire estate to the exclusion of the children of Wash Henson by three other women, both Betty and the children of the other three women being illegitimates, but all of them except Betty being the half-sisters of Mary Johnson, whereas Betty was her whole sister as aforesaid, she and Mary Johnson having the same mother and father, although born out of wedlock. It is true that under the Act of Congress of May 2, 1890, 26 Stat. 81, 98, the laws of the Cherokee Nation of Indians were given effect pertaining to marriage and divorce, and that the members of this tribe were not governed by the common law. But, the fact remains that Wash Henson was not married to the mothers of any of the claimants, and that his assumed relationship with them in each instance was illegal. While the common law did not govern the rights of the parties in that case, it may likewise be said that the common law does not govern the rights of the litigants in the case at bar, but that their rights are defined and controlled by our statutes of Descent and Distribution hereinbefore discussed.

But, it is argued on behalf of the appellants on this appeal that Ella Jackson, one of the three appellees to whom the court below awarded all of the proceeds of the sale of the property involved, was a complainant in the court below and is bound by the allegations of the bill of complaint to the effect that the children of Minerva Henderson, Lizzie Rhodes and Amanda Hicks were entitled to share in the property of the intestate, share and share alike; that another of the three appellees, Ann Courtney who was awarded a one-third interest in the proceeds of the sale by the decree of the court below suffered a decree pro confesso to be taken against her on the bill of complaint as a defendant thereto, and that she is likewise bound by the allegations of the bill of complaint against her, and is limited to an equal share with all of the other parties to the suit. We do not think that this position is now well taken for the reason that (1)

the bill of complaint contained a prayer that if the complainants "have prayed improperly or for insufficient relief, then they pray for such other relief . . . · as they may be entitled to in the premises," meaning, of course, under the pleadings and proof made at the hearing; and (2) because it was agreed that a sale of the property might be made for a division of the proceeds among the parties as their interest should appear and that the hearing to determine who were entitled to receive the proceeds of the sale as heirs-at-law of Lillie Brown, deceased, should be postponed until the hearing of the report for· confirmation, which was accordingly done, and, so far as the record discloses, no point was made in the court below that the said Ella Jackson and Ann Courtney were precluded by the pleadings from being awarded more than an equal share of the proceeds with all of the other parties litigant. Moreover, if this contention be sustained, John Henderson, who filed a cross-bill and alleged that Ella Jackson, Ann Courtney and he were entitled to all of such proceeds to the exclusion of the other parties to the partition proceeding, would still be entitled to his one-third interest, and the children of Lizzie Rhodes and Amanda Hicks would be awarded an interest in the proceeds of the sale that they were not otherwise entitled to under the allegations of the cross-bill and the proof upon the trial. Had an objection been made in the court below against the proof offered in support of the contention that Ella Jackson and Ann Courtney as well as John Henderson were entitled to a one-third interest each in such proceeds, as being contrary to the allegations of the original bill, the same could have been amended insofar as they were concerned upon proper application. This contention of the appellants made here for the first time cannot therefore be sustained both for the reason that it is not well taken and that it comes too late.

The decree of the court below must be affirmed and the cause remanded for distribution of the proceeds in accordance with the decree of the court below.

Affirmed and remanded.

DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

Section 1403 of the Code has no application here for among illegitimates there are no kindred of the whole blood, all such when kinship among illegitimates is recognized at all being, in the eyes of the law, kindred of the half-blood. They were specifically so designated in the first Mississippi statute which conferred the right to inherit property on illegitimates. This phrase stated a mere truism and was therefore superfluous and manifestly for that reason was eliminated from the later statutes. The phrases kindred "of the whole blood" and "of the half blood" are peculiar to the law of descent and distribution and originated in and their meaning became fixed at common law long before statutes, of which Section 1403 of the Code is a type, were enacted. At common law kindred of the whole blood are they that are "derived, not only from the same ancestor, but from the same couple of ancestors." 2 Blackstone's Commentaries, Star page 228. "The term 'ancestor' means merely the person from whom the estate passes, and not a progenitor, as in popular acceptation." Bailey v. Bailey, 25 Mich. 185, at page 188. Mere animal blood kinship is, of course, determined by the law of nature but blood kinship when resorted to by human beings for determining rights given or regulated by man-made law must be determined by that law, one of the rules of which in the law of descent and distribution of property is that ancestry and all blood kinship must be traced through birth in or of lawful wedlock. At common law the status of an illegitimate child is that of one without kindred. 10 C. J. S., Bastards, sec. 23, p. 105, but that rule has been changed with us as

to kinship with one's mother, but for obvious reasons, not as to kinship with one's father. Section 1408, Code of 1930. Such is the meaning of the words "kindred of the whole and half-blood" in Section 1403, for "words which have a clear and definite meaning at common law should be given that meaning when used in a statute, unless it is clear from the statute itself that they were used in a different sense." Whelan v. Johnston, 192 Miss. 673, 6 So. (2d) 300, 303; Dantzler Lbr. Co. v. State, 97 Miss. 355, 53 So. 1; Daily v. Swope, 47 Miss. 367.

The decree of the court below should be reversed and a decree to which this opinion would lead should be rendered here.

**Griffith, J.**, concurs in this opinion.